(May 31, 1906.)

STATE, Respondent, v. THOMAS J. McGINNIS, Appellant.

[85 Pac. 1089.]

CRIMINAL LAW—ABSENCE OF ACCUSED DURING PART OF TRIAL—VIEW OF PLACE WHERE OFFENSE WAS COMMITTED—CRIMINAL NEGLIGENCE —SUFFICIENCY OF EVIDENCE—PREJUDICIAL STATEMENTS BY WIT-NESS.

1. While section 7782, Revised Statutes, which provides that: ''If the indictment is for a felony, the defendant must be personally present at the trial; but if for misdemeanor, the trial may be had in the absence of the defendant,'' is mandatory; a brief, temporary and voluntary absence of the defendant from the court-room during the argument by counsel and ruling by the court on a motion to have the jury view the place where the offense was committed is not such a violation of the statute and invasion of such a substantial right of the accused as will cause a reversal of a judgment of conviction which is otherwise regular.

2. In a case where the court orders the jury to view the place where it is alleged that the offense was committed, it is error for the court to deny the defendant the right to be present at such inspection if he requests in person or by counsel the privilege of being present.

3. As to whether or not a defendant may waive the right of being present at a view of the place by the jury, *quaere*. *State v. Reed,* 3 Idaho, 754, 35 Pac. 706, criticised and soundness of rule questioned.

4. Evidence examined in this case and held that it establishes such a state of culpable and criminal negligence or recklessness and disregard for the safety of human life as to support a verdict of manslaughter.

5. Certain incompetent and inadmissible statements made by the witness that are disallowed and ruled out by the court, and the

jury admonished not to consider, and which are repeated by the witness and the same action taken thereon by the court, reviewed, and *held*, that although reprehensible on the part of the witness, they are not sufficient grounds for a reversal of the judgment.

(Syllabus by the court.)

APPEAL from the District Court of the Third Judicial District for Ada County. Hon. George H. Stewart, Judge.

Appellant was prosecuted on information by the county attorney, charged with the crime of manslaughter and was convicted as charged. He moved for a new trial and his motion was denied, and he thereafter appealed from the judgment and order. *Affirmed.*

T. D. Cahalan, Frank Martin and C. F. Koelsch, for Appellant.

The defendant not only has the right to be present at every stage of his trial, but he *must* be present—it is a right which he cannot waive. (Cooley on Constitutional Limitations, sec. 319; Clark's Criminal Procedure, sec. 148; *State v. Jenkins,* 84 N. C. 812, 37 Am. Rep. 643; *People v. Kohler,* 5 Cal. 72; *People v. Higgins,* 59 Cal. 357; *Gladden v. State,* 12 Fla. 562; *Smith* v. *People,* 8 Colo. 457, 8 Pac. 920; *Jackson v. Commonwealth,* 19 Gratt. (Va.) 656; *Adams v. State,* 28 Fla. 511, 10 South. 106; *Rolls v. State,* 52 Miss. 391; *State v. Smith,* 44 Kan. 75, 21 Am. St. Rep. 266, 24 Pac. 84, 8 L. R. A. 774; *Lovett v. State,* 29 Fla. 356, 11 South. 172; *Bearden v. State,* 44 Ark. 331; *State v. Schoenwald,* 31 Mo. 147; *Andrews v. State,* 34 Tenn. (2 Sneed) 550; *Younger v. State,* 2 W. Va. 579, 98 Am. Dec. 791.)

The improper statements of the witness Packenham on the witness-stand were highly prejudicial to the defendant and calculated to bias the minds of the jury against him. (*State v. Irwin,* 9 Idaho, 35, 71 Pac. 608, 60 L. R. A. 716.)

The record in this case does not show criminal negligence on the part of the defendant. Negligence rendering a man liable in a civil action for damages does not necessarily ren-

der him criminally responsible.   To have this effect it must
be gross.   (Clark & Marshall on Law of Crimes, sec. 264;
McLain on Criminal Law, sec. 130; Hughes on Criminal Law
and Practice, sec. 54; Wharton on Homicide, sec. 477; *Chrys-
tal v. Commonwealth,* 9 Bush, 669; *State v. Justus,* 11 Or. 178,
50 Am. Rep. 470, 8 Pac. 337; *Commonwealth v. Matthews,* 89
Ky. 287, 12 S. W. 333; *State v. Hardie,* 47 Iowa, 647, 26
Am. Rep. 496; *Cleghorn v. Thompson,* 62 Kan. 727, 64 Pac.
605.)

J. J. Guheen, Attorney General, Edwin Snow, Philip R.
Hindman   and   J. H. Hawley, Special Prosecutor, for Re-
spondent.

No affidavits are admissible to impeach or contradict the
court record.   (11 Cyc. 657; *People v. Judge,* 9 Cal. 19;
*Hahn v. Kelley,* 34 Cal. 391, 94 Am. Dec. 742.)

Where the record shows that the accused was present at
the commencement of his trial, and nothing to the contrary
appears therefrom, it will be presumed that he was present
at every subsequent state of the proceeding down to the ren-
dering of the final judgment of the court.   (*Dodge v. People,*
4 Neb. 220; *Rhodes v. State,* 23 Ind. 24; *Brown v. State,* 13
Ark. 96; *Smith v. State,* 60 Ga. 430; *Harriman v. State,* 2
Greene (Iowa), 270; *Stephens v. People,* 19 N. Y. 549;
*Holmes v. Commonwealth,* 25 Pa. St. 221; *State v. Craton,*
6 Ired. (28 N. C.) 164; *Grimm v. People,* 14 Mich. 300.)

Where, upon the trial of a criminal case, a view of the
premises is directed upon motion of the defendant, and no
request or expression of desire upon his part to be present at
such view is made, his absence from such view is not ground
for a new trial.   (*State v. Reed,* 3 Idaho, 754, 35 Pac. 706.)

The contumacy of a witness, in persisting in answering a
question after the court has ruled it out, furnishes no ground
for reversal when the court has expressly instructed the jury
to disregard the answer.   (*State v. Butterfield,* 75 Mo. 297;
*People v. Mead,* 50 Mich. 228, 15 N. W. 95.)

AILSHIE, J.—The defendant was charged by informa-
tion of the public prosecutor with the crime of manslaughter
in willfully and unlawfully shooting one C. A. Packenham,
at the county of Ada, state of Idaho, on the twenty-fifth day
of November, 1903. The trial, which took place in Febru-
ary, 1905, resulted in a verdict of guilty, and the defendant
was thereafter sentenced to imprisonment in the state pen-
itentiary for a term of six years. This appeal is prosecuted
from the judgment and from an order denying defendant's
motion for a new trial. The principal facts leading up to
and surrounding the homicide are briefly as follows: The de-
fendant left Boise City during the early afternoon of No-
vember 25, 1903, with a team, accompanied by James Kelley
and Clarence Still, and went up what is commonly known
as the Highland Valley road. The three of them were start-
ing on a hunting trip and the wagon was loaded with camp
outfit, and they all had their guns. When they reached a
point about three-quarters of a mile beyond the Kelley Hot
Springs, and some five or six miles from Boise, while driving
along the road the defendant McGinnis remarked to his com-
panions that he could hit a certain rock, pointing it out, to
the left of the road about two hundred feet distant. Kelley
advised him to save his ammunition as it was too close a shot.
They drove on a distance of eleven hundred or twelve hun-
dred feet and came to a slight ascent in the road where they
stopped the team to rest, and Still appears to have gotten
out of the wagon to fix something about the harness. The
defendant turned round in the wagon seat and remarked to
his companions, "I can hit that rock from here," and took
aim and fired. Kelley says he turned round about the same
time and saw dust rising on a sandy knoll about five hundred
feet distant from the point of firing and in line between the
point from which the defendant fired and the rock, and at
the same time saw a man fall in the road about two hun-
dred feet from the rock at which the defendant had fired.
Kelley remarked, "There is something wrong with that fel-

low back there; he is hurt or something"; to which the defendant replied, "I guess not; there is no man back there." After a few words were passed between them they told Still to get in the wagon and they turned and drove back and found the man lying in the road wounded by gunshot. The ball had entered the neck just above the collar bone, and, ranging backward and downward, had passed through the lungs and lodged in the third rib on the right side. They put him in their wagon and brought him to Boise, where they placed him in a hospital and where he received medical treatment and attention until the first day of December, on which date he died. The defendant was taken into custody by the officers soon after the wounded man was placed in the hospital. Packenham made an *ante-mortem* statement that was admitted in evidence, in which he said: "Above the Kelley Hot Springs on the road to Highland Valley, as I was passing along on foot, the above-named men (referring to McGinnis, Kelley and Still) appeared behind me on the road in a buggy. I made a cut-off and while off the road they passed me, and after some little distance I came into the road behind them near the Bedell house. They stopped near the Bedell house, and one of them got out and was fooling around when a shot was fired. I felt the bullet strike me in the throat. I began to get dizzy and squatted down to keep from falling. I motioned to them. They stayed there awhile and then got into the buggy and went on a piece; after awhile they turned and came back and stood around awhile, and then they put me in the wagon and brought me to town." The state has contended throughout the case that the killing was due to the criminal negligence of the defendant, or that if it was the result of the commission of a lawful act, that the same was done "without due caution and circumspection." On the other hand, the defendant claims that "the deceased met his death by accident and misfortune, through the unforeseen deflection of a bullet, which occurred in a manner which could not have been anticipated by any human foresight." The two principal errors assigned and relied on are: 1. That

the trial was had in part during the absence of the defendant; and 2. That the evidence is insufficient to justify the verdict and judgment.

It appears that on the morning of the second day of the trial, and before the defendant had appeared in court, his counsel moved the court, under section 7878, Revised Statutes, for an order directing the sheriff to take the jury to examine and view the place where the offense was alleged to have been committed. Counsel for the state consented and agreed to this motion, and the order was immediately made by the trial judge and the sheriff was sworn to take charge of the jury and keep them together as required by the statute, and two competent persons were appointed by the court to show the jury the place to be viewed by them. It seems that the defendant arrived about the time the jury were ready to start for the inspection. Neither he nor his counsel appear to have manifested any desire that he should accompany the jury, nor was any request made to that effect. The defendant did not go, but his counsel, as well as the counsel for the state, and the trial judge, did go, in company with the jury, sheriff and persons appointed to point out the place. A large number of affidavits have been filed in respect to the presence or absence of the defendant on this occasion. The minutes of the court, standing alone, show that the defendant was present at all times during the trial; but we think it has been successfully shown by the affidavits of defendant and his counsel, and others, that he was not in fact present in the courtroom when the foregoing proceedings were had.

Section 7782, Revised Statutes, provides that: "If the indictment is for a felony, the defendant must be personally present at the trial; but if for misdemeanor, the trial may be had in the absence of the defendant." There is an irreconcilable conflict among the decisions and authorities as to whether any absence whatever can be permitted. A very respectable line of authorities hold that a voluntary absence during the argument or ruling on a motion or demurrer is not reversible error. (12 Cyc. 523-527, and notes.) There

is a very learned and exhaustive note on this question to be found in connection with the case of *People v. Thorn,* 156 N. Y. 286, 50 N. E. 947, 42 L. R. A. 368, where a view and inspection by the jury in the absence of the defendant is considered and the authorities digested. It is clear to us that in the case at bar the defendant was not prejudiced and suffered no injury or wrong on account of his absence from the courtroom during the time his counsel was making the motion in question, and the court was passing on the same and admonishing the jury. The absence appears to have been wholly voluntary and with the knowledge of his counsel, who were present in court and representing him in the legal steps that were taken. While we regard section 7782, *supra,* as mandatory, still a brief, voluntary and temporary absence such as is shown here, where it is apparent that no harm has been done the defendant, should not cause a reversal of a conviction otherwise regular.

Counsel for appellant have suggested upon this appeal that it was error for the trial court to permit an examination and inspection by the jury of the place where the offense is charged to have been committed without having the defendant present on such examination. It does not appear, however, from the record that this ground of error was urged in the trial court at the time of the trial or on motion for a new trial; neither does it appear that any request was made by counsel for the defendant, or by the defendant himself, that he be present at such examination. On the other hand, counsel for defendant was present at all times. The record does not come to us in such condition that we would feel justified in this case, in face of the decision on the same point in *State v. Reed,* 3 Idaho, 754, 35 Pac. 706, in passing upon the question as to whether or not it was error to cause a view and inspection by the jury in the absence of the defendant. The attorney general has called our attention to *State v. Reed, supra,* in which this court held that it was not error to have a view of the premises by the jury in the absence of the defendant. We have very grave doubts, however, as to

the correctness of that decision, and while we are not called upon in this case to either affirm or overrule the doctrine of that case, we are strongly impressed with the fallacy of the reasoning on which that line of authorities is founded.  The position taken by the attorney general in the present case amounts, upon the whole, to a quite conclusive argument against the theory on which those cases rest.  It is held by that line of authorities that an inspection and examination of the place or premises where the offense is charged to have been committed, or some material fact occurred, is "not a part of the trial," and does not amount to "the taking of evidence in the case."  Counsel for the state, however, in arguing the sufficiency of the evidence to support the verdict and judgment, point out the great importance of a personal inspection of the premises and surroundings by the jury and the impression the same must have formed on their minds, and says: "We cannot imagine any evidence that could be given by witnesses upon a matter of this kind that would be as effective with a jury as such personal inspection of the premises. . . . . Look at this affair in any way we can, and we must. come to the conclusion that the sufficiency of the evidence cannot be decided simply by reading the evidence given by the witnesses, when the more important evidence, the inspection of the premises, was in the hands of the jury." It would be a strange course of reasoning that would hold an inspection of the premises *evidence* in the case for the purpose of weighing the sufficiency of the evidence to support the verdict and judgment, and, on the other hand, would contend and hold that it is not evidence and not a part of the trial, but a mere "aid to understand and apply the evidence," when we come to consider the necessity for the presence of the defendant at such inspection.  If it was evidence in the one instance, it was evidence in the other; if it was a part of the trial in the one case, it was a part of the trial in the other, and all the ingenious theories that courts and counsel have drawn from time to time cannot change this palpable fact.  We have no doubt of the right of a defendant to

be present at such an examination and inspection in any and every case where he requests that privilege. We are not prepared, however, to say that he may not waive such right and privilege. Another thing which might enter into the consideration of such a question is as to whether or not the defendant was in custody of the officer at the time of the trial. That fact does not appear in this case. We are not informed by the record whether the defendant was on bail and permitted to come and go at pleasure, or whether he was in custody of the officer and taken back and forth to the jail during the recesses of the court.

The other principal contention made by counsel for defendant on this appeal is that the evidence in the case fails to show the defendant guilty of any offense whatever in connection with this homicide. We have examined the record and the various exhibits very minutely and carefully, and it" seems to us that it has been quite clearly established that the defendant failed to exercise that care and consideration which the law requires when he was firing a deadly weapon along the public highway in the manner and under the circumstances shown in this case. While he testifies that he did not see any person in the direction in which he fired, still the physical facts and conditions that surrounded him, the nearness of Packenham to the object at which defendant claims he fired, the level and open nature of the grounds intervening and surrounding, are all silent but very forceful evidence in contradiction of his story. The fact that defendant on the public highway fired a shot from a gun of carrying power of more than a mile at an object some twelve hundred feet distant and itself only two hundred feet from the highway, was an act of carelessness which becomes culpable where it results in the death of one traveling orderly and peacefully along on that same highway.

The only other assignment of error we deem it necessary to consider in this case is that urged against certain statements made by the witness Packenham, a brother of the deceased. It appears that he was with the wounded man almost

continuously from soon after he was taken to the hospital until his death, and in testifying concerning the sickness and death of his brother, said: "He (referring to the deceased) said to me, 'Chester, they have done me up this time.'" This statement by the witness was objected to and the objection was sustained, and the court instructed the jury to disregard it. Further on in the witness' testimony he said: "A little later in the evening and after he was put in his room, he said to me, 'Chester, what did those drunken fools want to kill me for?'" The court ordered this stricken from the evidence and instructed the jury to disregard it. It seems that in the course of the witness' testimony he repeated these statements one or more times, and the court as often warned him against making them and admonished the jury to disregard them. The appellant complains of these statements as prejudicial, and cites in support thereof State v. Irwin, 9 Idaho, 35, 71 Pac. 608, 60 L. R. A. 716. While it would not have been out of place to have punished the witness if it appeared to the trial judge that he repeated such statements intentionally and maliciously, still we do not think they prejudiced the defendant's case where the trial court was repeatedly admonishing the jury against considering such statements, and at the same time was cautioning the witness against repeating them. They are not of such a damaging character as to materially prejudice intelligent and fair-minded jurors against the accused. They do not fall within the rule announced in State v. Irwin, and do not constitute a ground of reversal.

We have examined the other assignments of error made by appellant, and find nothing in them that constitutes a cause of reversal or appears to require our further consideration here. The judgment should be affirmed, and it is so ordered.

Stockslager, C. J., concurs.

Sullivan, J., concurs in the conclusion reached.