496 P.2d 676

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Earl S. CARVER et al., Defendants-Appellants.**

**No. 10555.**

Supreme Court of Idaho.

April 27, 1972.

Rudolf D. Barchas of Rayborn, Rayborn, Webb & Pike, Twin Falls, for defendants-appellants.

W. Anthony Park, Atty. Gen., Martin R. Ward, Deputy Atty. Gen., and John F. Croner, Asst. Atty. Gen., Boise, for plaintiff-respondent.

McFADDEN, Justice.

Defendants-appellants were prosecuted by information for burglary in the first degree, a felony. The cause was tried to a jury which returned a verdict of guilty against each man and the district court entered judgments of conviction accordingly. Defendants appeal from the judgments of conviction.[1]

The crime alleged in the information was the forcible break-in on June 9, 1969, of a building housing a pro-shop and snack bar located at the Twin Falls Municipal Golf Course. Twin Falls city police officers testified they observed the three defendants inside the building at 2:00 a. m. on the above date, and that apparently the building had been entered after a window was broken. A pro shop employee testified the window was unbroken and the whole building was locked securely when he closed on June 8. He also testified that the snack bar was neatly arranged and the food stored away in cupboards and in the refrigerator.

When arrested at the scene the defendants had in their possession certain food items which were shown to have been taken from the snack bar. The evidence showed the refrigerator door was ajar and that the intruders had helped themselves to a snack. Additionally, two screwdrivers, a metal pry bar, and a length of reinforcing steel were found on the person of defendants when they were thoroughly searched at the police station.

Appellants assign eight errors, the first of which we deem determinative of their appeal. Appellants claim their trial was procedurally defective because they were not personally present during the impaneling of the jury. They point to the reporter's transcript which indicates that at the commencement of the trial the three defendants were not in the courtroom but rather were in the custody of the sheriff. At the beginning of the voir dire the prosecuting attorney asked the presiding judge

---

1. This Court recently decided another appeal involving these defendants. *See* State v. Moen, 94 Idaho 477, 491 P.2d 858 (1971).

whether the defendants could be brought in and the court answered that they could come in anytime. Thereupon the case was explained to the prospective jurors and respective counsel introduced. The jurors were then examined, the defense exercising five peremptory challenges, the state four, before a panel of twelve was duly sworn. Only after that time did the court ask the prosecuting attorney to have the defendants brought into the courtroom.

While the reporter's transcript clearly reflects the defendants' absence, the clerk's minutes pose a conflict. Those minutes purport to show that the prosecuting attorney was present along with defense counsel and defendants at the time voir dire began. Despite this conflict the State concedes the accuracy of the reporter's transcript which seems the only reasonable stance in light of the recorded remarks of the participants.

The State takes the position that while the record shows the defendants did not voluntarily waive their right to be present and were outside the courtroom in the sheriff's custody and that this was improper, the error was nevertheless not so prejudicial as to warrant a new trial. Appellants' position is that the error was fundamental and vitiates the trial. The issue for resolution, one of first impression in Idaho, is the character of the protected right to be personally present at one's trial and the effect on the result when the right is disregarded.

■ The right to be personally present at one's trial for a felony or serious offense is embodied in Amendments Six and Fourteen of the United States Constitution, Idaho Const. art. 1, § 7 and § 13, and I.C. § 19–1903 which provides, "Presence of defendant.—If the indictment is for· a felony, the defendant must be personally present at the trial * * *." Broadly speaking, a defendant's right to be present in the courtroom at each stage of his trial has been denominated a "basic right" guaranteed by the Sixth Amendment and the due process clause of the Fourteenth Amendment. Lewis v. U. S., 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892) ; Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) ; Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed. 2d 353 (1970). (*See also* Duncan v. State of Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), declaring the right to jury trial in serious criminal cases a fundamental right which the states must extend to all persons.) *Cf*. State v. McGinnis, 12 Idaho 336, 85 P. 1089 (1906).

■ That the impaneling process is part of the trial is a matter of settled law. Specific questions concerning a defendant's absence during the impaneling of the jury have been dealt with in other jurisdictions. *See* Annotation, 26 A.L.R.2d 762. The Supreme Court of the United States has passed on the specific question on two occasions, in Lewis v. U. S., *supra*, and in Hopt v. People of the Terr. of Utah, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884).[2]

---

2. Hopt v. People of the Terr. of Utah has been subsequently limited to merely holding that in the case the absence of defendant plainly violated a mandatory territorial statute and that any discussion of due process principles was dicta. *See* Frank v. Mangum, 237 U.S. 309, 340–341, 35 S.Ct. 582, 592, 59 L.Ed. 969, 985 (1915) ; Snyder v. Commonwealth of Mass., 291 U.S. 97, 117 n. 2, 54 S.Ct. 330, 336 n. 2, 78 L.Ed. 674, 684 n. 2 (1934).

Justice Cardozo, writing for a bare majority in Snyder v. Commonwealth of Mass., *supra*, also stated that the Lewis v. United States decision was not controlling vis-a-vis constitutional principles of due process. Justice Black noted in the Illinois v. Allen decision that "The broad dicta in Hopt v. Utah, *supra*, and Lewis v. United States [citation], that a trial can never continue in the defendant's absence have been expressly rejected. Diaz v. United States, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912)." 397 U.S. at 342, 90 S.Ct. at 1060, 25 L.Ed.2d at 358. Nonetheless, Justice Black cited Lewis v. United States for the following proposition:

"One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his

Clear holdings are found in the recent decisions of United States v. Crutcher, 405 F.2d 239 (2d Cir. 1968), cert. den. 394 U.S. 908, 89 S.Ct. 1018, 22 L.Ed.2d 219 (1969), and Knight v. State, 273 Ala. 480, 142 So. 2d 899 (Ala.1962).

■ The rationale of those decisions is that the defendant's presence during voir dire may well be helpful to his defense. The defendant may wish to challenge a particular prospective juror for any one of several valid reasons, one of which may be a negative visceral reaction. That is his long recognized privilege and one which is important to the trial process. In Snyder v. Commonwealth of Mass., 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934), the general test for determining when a defendant's personal presence is required is stated as follows:

"* * * whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge. * * * Again, defense may be made easier if the accused is permitted to be present at the examination of jurors or the summing up of counsel, for it will be in his power, if present, to give advice or suggestion or even to supersede his lawyers altogether and conduct the trial himself. * * *." 291 U.S. at 105–106, 54 S.Ct. at 332, 78 L.Ed. at 678.

■■ We add that an important aspect of any trial is its openness and fairness. The purpose of having an accused present is to insure that he has first hand knowledge of the actions taken which lead to the eventual outcome of the trial and particularly that he knows how the jurors who decide the facts were selected. Where part of the court proceedings are held outside his presence, an accused will automatically be suspicious. From the practical standpoint, an accused's presence during voir dire examination would be important in determining which jurors may be acquainted in some way with defendant, and vice versa. Impartiality and objectivity would be aided by the defendant's presence.

■ We turn now to the question whether the error here must result in a new trial. The ordinary test for determining if the constitutional error warrants a new trial is whether it is harmless or prejudicial. Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). It appears, however, that we are faced with a denial of a fundamental personal right where the record plainly shows the error was not cured, see Evans v. United States, 284 F.2d 393 (6th Cir. 1960), expressly or impliedly waived by the defendants themselves, State v. McGinnis, supra, Brister v. State, 231 Miss. 722, 97 So.2d 654 (Miss. 1957), and see Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), subsequently ratified by defendants, State v. Melendez, 244 So.2d 137 (Fla.1971), or waived by obstreperous courtroom conduct, Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). Furthermore the Court in Chapman v. United States made it clear that there are errors affecting fundamental constitutional rights "so basic to a fair trial that their infraction can never be treated as harmless error." 386 U.S. at 23, 87 S.Ct. at 827, 17 L.Ed.2d at 710.

The record before us makes any comment regarding possible prejudice to defendants here due to denial of their right useless. There are no reasonable inferences that may be drawn concerning the jury picked and the quality of its decision. The error goes to the procedure, not the result, and if this right is to be upheld the only alternative is a retrial. This reasoning was adopted by the Court of Appeals for the Second Circuit in United States v.

trial." 397 U.S. at 338, 90 S.Ct. at 1058, 25 L.Ed.2d at 356.
The niceties of jurisprudence aside, the Lewis v. United States decision is good authority as it comes to grips with what are the basics in our system of jurisprudence, and whether defendant's presence is a fundamental right, in historical terms, essential to a fair trial. This is the analysis employed in Duncan v. State of La., 391 U.S. 145, 88 S.Ct. 1444, 20 L. Ed.2d 491 (1968).

Crutcher, *supra,* as it was by the Supreme Court of Michigan in People v. Medcoff, 344 Mich. 108, 73 N.W.2d 537 (1955). In the latter opinion the court discussed a procedure whereby defendants had been excluded from the courtroom during an examination of jurors as to asserted misconduct of one juror. In ordering a new trial the court rejected both a burden of showing prejudice (or lack thereof) test and a harmless error test. Instead they adopted a per se rule:

> "We recognize that all that transpired between judge and jurors as well as the court's conclusion that there had been no misconduct is in the record before us. Therefore, it is argued that defendants have shown no prejudice. However, the abrogation of defendants' right to be present is not determined from the result and review thereof of the court's inquiry but rather from the mere fact that during the inquiry defendants were not given an opportunity to exercise those privileges which their right to be present affords them. Where such fundamental rights are denied, the guilt or innocence of the accused is not concerned and neither party is put to the burden of showing actual injury or prejudice or the lack of it. Injury is conclusively presumed. * * *." 73 N.W. 2d at 543.

Commonwealth v. Robichaud, 264 N.E.2d 374 (Mass.1970), and Knight v. State, 273 Ala. 480, 142 So.2d 899 (Ala.1962), are in accord with this reasoning.

■ As pointed out above, courts are especially wary when errors are committed which involve the selection of the jury. This Court has held that a departure from the selection process is reversible error. State v. Carringer, 84 Idaho 32, 367 P.2d 584 (1961). We adhere to that philosophy of caution today. If the right to be present at the impaneling of the jury is to have meaning to these defendants, there must be a new trial.

For the benefit of the district court on retrial we will now discuss the remaining assignments of error. I.C. § 1–205.

■ Appellant Carver complains that he was forced to appear at his trial in an unkempt manner. The transcript reflects that he was unshaven and that he informed the court that he only appeared that way because the sheriff did not permit him to clean up for trial. It does seem reasonable that a defendant in custody before appearing in court be accorded the opportunity to make himself presentable, to be clean and groomed. Where defendant expresses this desire and is co-operative he ought to be accommodated. While dealing with a more severe factual situation than reflected by this record, the decision of the Colorado Supreme Court in Eaddy v. People, 115 Colo. 488, 174 P.2d 717 (1946), is applicable. The court there reasoned that "every defendant is entitled to be brought before the court with the appearance, dignity, and self-respect of a free and innocent man * * *." The record here shows Carver explained his appearance to the court as soon as he was brought in but that counsel made no motion for a continuance or recess so that he could make an effort to improve his appearance.

■ Appellants next assign error to the failure of the State to prove the defendants lacked consent to enter the "pro shop" building and to take food from the snack bar. They complain the State offered no proof showing the ownership of the building or of the personal property therein. There is nothing definite in the record which indicates the ownership of the building; one could reasonably deduce that the City of Twin Falls owned the golf course and buildings, and it does appear that the "pro shop" was a concession to a private business.

The State contends it need not establish ownership of the building or lack of consent to enter. The State also contends it need not show any items were taken but only that appellants entered "with intent to

commit grand or petit larceny or any felony." I.C. § 18–1401. In these regards the State is correct.

I.C. § 18–1401 does not require proof of ownership. State v. Bull, 47 Idaho 336, 276 P. 528 (1929). The statute is concerned with the entering of a building for an unlawful purpose rather than its ownership. To show intent to commit larceny, the prosecutor is not required to show defendants lacked consent of the owner of the personal property but may show lack of consent by means other than testimony by the owner. State v. Bull, *supra*, State v. Polson, 81 Idaho 147, 339 P.2d 510 (1959). Here defendants were shown to have been inside the building after business hours and to have taken and consumed food items normally sold to customers. That the defendants intended to take food from the building could be fairly concluded from these facts and circumstances. State v. Peterson, 87 Idaho 147, 391 P.2d 846 (1964); Ex parte Seyfried, 74 Idaho 467, 264 P.2d 685 (1953). The State's evidence was unrefuted.

 Appellants complain of alleged prejudicial remarks of witnesses. Particularly they complain of comments by two police officers who testified that a pry bar was "concealed" on Kinner and a screwdriver and iron rod were "concealed" on Moen. No motions to strike were made; however, the word "concealed" is an apt choice of words in that these items had been found tucked behind each individual's belt inside their clothing. Those witnesses did unnecessarily embellish their testimony by indicating appellants used aliases. The information shows appellant Kinner uses the name Ware but there is nothing in the record regarding aliases for the others. Testimony raising this side issue of false names was irrelevant.

 Appellants' next contention is that comments by their then defense counsel (different counsel represents appellants on appeal) and the court were prejudicial. The remarks by their then counsel came after the State rested. He stated:

"As I indicated initially, these defendants will not take the stand on their own behalf; and the burden is then entirely on the prosecution to prove this case beyond a reasonable doubt."

The court then asked for closing arguments, but backtracked when he realized the defense had not rested; the remarks were:

"Oh, just one second. Mr. Anderson, you have indicated that the defendants do not intend to take the witness stand. Do you have any other defense witnesses to present?"

This colloquy between counsel and the court was innocuous and cannot be construed as in any way urging the jury to consider the failure to take the stand as an admission of guilt as proscribed by Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). There was no error in this regard.

 Appellants' final contention focuses on three of the jury instructions, numbers 3, 8 and 13, which appellants assert gave the jury the impression the court believed the defendants guilty. They contend that the instructions can be read to mean that these defendants entered the building with the necessary intent. However, we think the instructions are sufficiently abstract that the jury was not misled. The language points up the key element of burglary, that *intent* to commit larceny (or any felony) must coincide with the entering, and left the determination of that fact to the jury.

 Instruction 13 is an instruction relating to the proof of the intent to commit larceny (as charged in the information) which allows the jury to find such intent from the circumstances of defendants' acts. The State's evidence tended to establish the entering and the taking of food. Although not a model, the instruction correctly states the law that the intent to commit larceny may be found from the fact that items were wrongfully taken. There was no prejudicial error in giving these instructions.

The judgments of conviction are hereby reversed and the cause is remanded for further proceedings.

DONALDSON and SHEPARD, JJ., and MAYNARD and HAGAN, District Judges, concur.