**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 50725**

| | | |
|---|---|---|
| **ELLEN SALAZAR,** | ) | |
| | ) | |
| **Petitioner-Respondent-** | ) | |
| **Cross Appellant,** | ) | **Twin Falls, November 2024 Term** |
| | ) | |
| **v.** | ) | **Opinion Filed: December 19, 2024** |
| | ) | |
| **ERASMO SALAZAR,** | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| **Respondent-Appellant-** | ) | |
| **Cross Respondent.** | ) | |
| _____ | ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Cassia County, Michael P. Tribe, District Judge. Blaine Cannon, Magistrate Judge.

The district court's decision is <u>reversed</u>, and the case is <u>remanded with instructions</u> to vacate the order of contempt and judgment, and remand to the magistrate court for further proceedings.

Erik R. Lehtinen, State Appellate Public Defender, Boise, for Appellant. Sally J. Cooley argued.

Roy, Nielson, Platts & McGee, LLP, Twin Falls, for Respondent. Eric B. Nielson argued.

_____

BRODY, Justice.

This appeal concerns a non-summary contempt trial arising from a divorce proceeding, which took place without the presence of the contemnor and without affording the contemnor the right to counsel. Husband and Wife divorced in 2020, and the judgment and decree of divorce obligated Husband to pay Wife child support and attorney fees, among other terms. Roughly two years later, Wife brought the underlying contempt proceeding, charging Husband with nine counts of contempt for failing to comply with the terms of the divorce decree. On the morning of the contempt trial, Husband contacted a deputy clerk of the court, indicating he was stuck in Utah with a broken vehicle and would be unable to attend the trial. The magistrate court determined that Husband's failure to appear was willful and held the contempt trial despite his absence. At the end

1

of the trial, the magistrate court further determined that Husband waived his right to counsel. Ultimately, the magistrate court found Husband in criminal contempt of the divorce decree, imposing a 70-day jail sentence with 50 days suspended, and awarding Wife additional attorney fees.

On intermediate appeal, the district court affirmed in part and reversed in part. The district court affirmed the magistrate court's decision to hold the non-summary contempt trial and sentencing hearing in Husband's absence and without counsel. However, the district court determined there was insufficient evidence that Husband waived his right to counsel; therefore, it concluded that the magistrate court violated Idaho Rule of Civil Procedure 75(*l*)(1) by imposing a sanction of incarceration without an attorney present to represent Husband.

On appeal to the Idaho Supreme Court, Husband argues the district court erred in affirming the magistrate court's decision to hold the non-summary contempt trial and sentencing hearing in his absence and without counsel because the procedure did not adhere to Rule 75 and violated his constitutional right to due process. Wife cross-appeals, arguing the district court erred by failing to address and award attorney fees and costs to her on intermediate appeal. For the reasons set forth below, we reverse the district court's decision and remand with instructions to vacate the order of contempt and remand to the magistrate court for further proceedings consistent with this opinion.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Husband and Wife divorced on February 6, 2020. The parties are the parents of three children who were minors at the time the judgment and decree of divorce was entered. The judgment and decree of divorce obligated Husband to pay child support to Wife in the amount of $1,205.83 per month, and ordered both parties to pay certain debts and complete other tasks, such as filing taxes. Husband was also ordered to pay Wife $1,327.50 in attorney fees and costs under Family Law Rule 710 (2019) due to the delays caused by Husband throughout the litigation. About one year later, Wife filed a petition for a money judgment against Husband to recover $20,541.49 in past due child support and $1,500.00 for attorney fees. The magistrate court subsequently entered an order of default and judgment in favor of Wife.

After another year passed, Wife filed a contempt action against Husband alleging nine counts of contempt by Husband for failing to: (1) pay Wife $20,541.49 for child support; (2) pay Wife's attorney fees; (3) pay all of the T-Mobile bill, the Cable One bill, Wife's medical debt, and

2

an orthodontist debt; (4) file his 2015 and 2016 state and federal tax returns and entirely indemnify Wife from any tax obligation; and (5) refinance or remove Wife's name from the second mortgage on a home located in Burley. Three days later, the magistrate court ordered Husband to appear for his arraignment, which was to be held on April 18, 2022.

A professional process server contacted Husband via text message to schedule a time to provide Husband with legal process concerning the contempt proceedings. Husband refused to cooperate with the process server, lectured the process server on his lack of professionalism, and called the process server derogatory names, among other repugnant retorts. Despite Husband's attempts to avoid service of process, he was served on April 14, 2022. However, Husband did not appear for his arraignment, and the magistrate court subsequently issued a bench warrant.

Following his arrest, Husband was arraigned on the contempt charges. Husband was informed that, if the contempt allegations involved a claim for child support, he could be imprisoned for up to 30 days. Husband was further informed of his rights under Idaho Criminal Rule 43 and Idaho Rule of Civil Procedure 75, including:

a. The right to be represented by an attorney and if [Husband] is not represented by an attorney and cannot afford an attorney, [Husband] may request the appointment of an attorney at public expense.

b. The right to a public court trial.

c. The right to the presumption of innocence. All elements of contempt must be proven beyond a reasonable doubt. If the court intends to impose consecutive criminal sanctions totaling more than six months in jail, [Husband] has the right to trial by jury.

d. The right to compel the attendance of witnesses to testify in [Husband]'s behalf.

e. The right to call witnesses in mitigation of the sanction and the right to be heard in order to present matters in mitigation or to otherwise attempt to make amends with the court.

f. The right to exclude evidence that was obtained in violation of [Husband]'s Fourth Amendment Rights.

g. The right to a unanimous verdict if the trial is by jury.

Husband signed the notification of rights, which was submitted to the magistrate court.

On June 23, 2022, the magistrate court held a hearing on this matter. During the hearing, the magistrate court read each of the charges of contempt against Husband, as presented in Wife's motion for contempt and enforcement, and notified Husband he was facing up to 70 days in jail. Husband requested that he be appointed a public defender. The magistrate court questioned

3

Husband concerning his financial status and—after determining that Husband did not qualify for the appointment of counsel at public expense—denied his request. The magistrate court then scheduled the pretrial conference and trial dates to occur in August.

Thereafter, Husband appeared at the pretrial conference through Zoom with the assistance of his sister and complained that he was suffering from a migraine. Husband was not represented by counsel. The magistrate court confirmed Husband's participation during the upcoming contempt trial and reminded the parties that the hearing would be in person.

On the morning of the contempt trial, Husband called the clerk of the court and reported that he was still in Utah and his vehicle would not start; thus, he would be unable to attend the trial. At the beginning of the trial, the magistrate court referenced the phone call and concluded there was no reason the trial could not take place despite Husband's absence. The criminal contempt trial proceeded in Husband's absence and no attorney appeared on his behalf. Wife's counsel presented evidence in support of Wife's contempt motion, with Wife testifying as the only witness.

The magistrate court subsequently found Husband guilty of all nine contempt charges. As the magistrate court made its findings and conclusions on the record, it discussed Husband's absence and noted the options available to Husband to be present at the trial, such as using Lyft, Uber, bus, shuttle, or having a family member or friend drive him. The magistrate court also noted at the beginning of the hearing that Husband could have attempted to log into the Zoom meeting for the hearing. Ultimately, the magistrate court found that Husband's failure to appear was willful and that such willfulness was enough to complete the required findings for contempt. Following an exchange with Wife's counsel, the magistrate court also determined that it had respected Husband's right to counsel because Husband was aware of the right and was given an opportunity to hire counsel, and that it could infer a knowing and voluntary waiver of this right from the circumstances.

The magistrate court ordered Husband to serve 70 days in jail, with 50 days suspended, and placed Husband on probation for an unspecified period. Husband was ordered to pay Wife's reasonable attorney fees and costs related to bringing the contempt action. The magistrate court also issued a civil bench warrant because Husband was not present for his contempt trial. Husband was later arrested on the warrant, and was held in jail for three days. Husband was also ordered to pay Wife's attorney fees of $3,875.83 for the contempt trial and disposition hearing.

4

About three weeks later, Wife filed a motion seeking to revoke Husband's probation and asking for a civil bench warrant. Wife represented that Husband violated the terms of his probation after he stopped paying child support. She further argued that Husband had transportation during the contempt trial based on screenshots of Husband's social media accounts, which showed that Husband traveled to various breweries throughout Utah prior to and contemporaneously with the contempt trial. This allegation was not disputed or denied by Husband.

Husband subsequently appealed the magistrate court's order of contempt to the district court, arguing that the magistrate court abused its discretion and violated Husband's due process rights by holding the contempt trial and imposing criminal sanctions while Husband was absent. In response, Wife argued that the magistrate court properly concluded that Husband was willfully absent from the contempt trial; therefore, the court did not err by holding the trial in Husband's absence.

The district court affirmed in part and reversed in part the magistrate court's order of contempt. The district court concluded that the magistrate court did not abuse its discretion when it held the contempt trial and imposed non-incarceration sanctions in Husband's absence because (1) Husband "waived his right to participate in the contempt trial by not attending when he had notice[,]" and (2) "[a] knowing and voluntary waiver was not required as it is required to waive the right to counsel." However, the district court determined "[t]he magistrate [court] erred in imposing incarceration as a sanction when [Husband] did not knowingly and voluntarily waive his right to counsel and was not represented by counsel." Accordingly, the district court reversed the magistrate court's order of contempt in part (vacating the jail sanction) and remanded the matter for amendment of the contempt order.

Husband timely appealed. Wife cross-appealed based on the district court's failure to address or award attorney fees and costs.

## II.    STANDARDS OF REVIEW

"When an appeal is initially taken to the district court from a decision by a magistrate, any subsequent review will be conducted independent of, but with due regard for, the decision of the district court." *Martinez v. Carretero*, 173 Idaho 87, ___, 539 P.3d 565, 571 (2023) (quoting *O'Holleran v. O'Holleran*, 171 Idaho 671, 673, 525 P.3d 709, 711 (2023)). "When this Court reviews the decision of a district court acting in its appellate capacity, this Court reviews the record of the magistrate court 'to determine whether there is substantial and competent evidence to

support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings.' " *Id*. at ___, 539 P.3d at 571–72 (quoting *O'Holleran*, 171 Idaho at 673, 525 P.3d at 711). "If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure." *Houston v. Houston*, 172 Idaho 264, 268, 531 P.3d 1161, 1165 (2023) (quoting *Nelson v. Evans*, 166 Idaho 815, 819, 464 P.3d 301, 305 (2020)). "Thus, this Court does not review the decision of the magistrate court. Rather, we are procedurally bound to affirm or reverse the decisions of the district court." *Erickson v. Erickson*, 171 Idaho 352, 361, 521 P.3d 1089, 1098 (2022) (quoting *Med. Recovery Servs., LLC v. Eddins*, 169 Idaho 236, 242, 494 P.3d 784, 790 (2021)).

### III.  ANALYSIS

**A.  The magistrate court erred when it held Husband's criminal contempt trial in absentia.**

The magistrate court recognized that Husband had a right to be present at his criminal contempt trial and advised him of that right in a written form during the initial appearance on May 23, 2022. However, the magistrate court found that Husband's absence at the trial was willful, and the district court affirmed this finding on intermediate appeal, holding Husband had adequate notice of the trial and a "knowing and voluntary waiver was not required as it is required to waive the right to counsel."

On appeal to this Court, Husband contends a defendant must be present at the trial's inception before he or she can waive this constitutional right through a later, voluntary absence. He further argues that his conduct was insufficient to establish a knowing, intelligent, and voluntary waiver of his right to be present at the criminal contempt trial and, therefore, the magistrate court violated his due process rights by holding the trial in absentia. In response, Wife argues the magistrate court correctly determined Husband waived his right to be present because he was deliberately absent, as shown by his social media posts before and after the trial and based on Husband's prior "poor behavior, dishonesty, bad acts, and abuse of the court system." Wife further argues that Husband did not need to be present at the initiation of the trial to waive his right to be present because (1) a contemnor's presence at trial is not compulsory under Idaho Rule of Civil Procedure 75, and (2) Idaho Criminal Rule 43 is inapplicable to contempt proceedings. For the reasons set forth below, we conclude that Husband's willful absence from the contempt trial, standing alone, did not provide a sufficient basis for a knowing, intelligent, and voluntary waiver

6

of the right to be present at trial. Consequently, the magistrate court erred by proceeding with the contempt trial in Husband's absence.

" '[A] contempt proceeding is sui generis,' i.e., of its own class." *Abell v. Abell*, 172 Idaho 531, 539, 534 P.3d 957, 965 (2023) (alteration in original) (quoting *State v. Palmlund*, 95 Idaho 150, 153, 504 P.2d 1199, 1202 (1972)). A contempt action is "an extraordinary proceeding and should be approached with caution." *Id.* (quoting *Watson v. Weick* (*In re Weick*), 142 Idaho 275, 281, 127 P.3d 178, 184 (2005)). "Unlike other proceedings that are wholly civil or criminal in nature, the ultimate civil or criminal nature of a non-summary contempt proceeding, which results in a finding and judgment of contempt, 'is based upon the penalty imposed *at the conclusion* of the proceedings.' " *Id.* (internal citation omitted) (emphasis in original) (quoting *Camp v. E. Fork Ditch Co.*, 137 Idaho 850, 864, 55 P.3d 304, 318 (2002)). "In other words, a contempt proceeding is inherently rear-facing or reflective, and '[w]hether contempt is criminal or civil does not depend upon the nature of the lawsuit in which the contempt proceedings are brought.' " *Id.* (alteration in original) (quoting *Camp*, 137 Idaho at 862, 55 P.3d at 316). "Because of this, the nature of the sanction ultimately imposed—civil or criminal—is critical; the sanction imposed reflectively determines what federal constitutional rights were applicable and required during the earlier and underlying proceedings." *Id.* at 539–40, 534 P.3d at 965–66 (citing *Camp*, 137 Idaho at 860–61, 55 P.3d at 314–15).

In this case, there is no dispute that the nature of the contempt sanction imposed on Husband was criminal. "A criminal sanction is unconditional, meaning the contemnor cannot avoid the sanction entirely or have the sanction cease by complying with a prior court order." *C&M Inv. Grp., Ltd. v. Campbell*, 164 Idaho 304, 306–07, 429 P.3d 192, 194–95 (Ct. App. 2018) (citing I.R.C.P. 75(a)(7)). "A suspended sanction with probationary conditions is a criminal sanction, as is a sanction that includes provisions that are both conditional (civil) and unconditional (criminal)." I.R.C.P. 75(a)(7). Here, the magistrate court ordered Husband to serve 70 days in jail, with 50 days suspended, and placed Husband on probation for an unspecified period. Thus, the sanction imposed was criminal because Husband could not avoid the 20-day period of incarceration and included a suspended sanction of 50 days of incarceration with probationary conditions. Accordingly, Husband was entitled to the applicable federal constitutional rights afforded to contemnors in criminal contempt actions.

7

"The right to be present at trial and confront witnesses is fundamental and essential to a fair trial." *Ex parte Johnson*, 654 S.W.2d 415, 421 (Tex. 1983) (first citing *Pointer v. Texas*, 380 U.S. 400, 405 (1965); then citing *Kirby v. United States*, 174 U.S. 47, 55 (1899)). This right protects against state infringement under the Confrontation Clause of the Sixth Amendment, which is applied to the states through the due process clause of the Fourteenth Amendment. *Pointer*, 380 U.S. at 403; *Illinois v. Allen*, 397 U.S. 337, 338 (1970); *see also United States v. Gagnon*, 470 U.S. 522, 526 (1985) ("The constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment . . . ."). In felony criminal cases, the right of a defendant to be present at trial is also secured by Article I, section 13 of the Idaho Constitution. *State v. Kropp*, 168 Idaho 948, 950, 489 P.3d 859, 861 (Ct. App. 2021); *see also State v. Carver*, 94 Idaho 677, 679, 496 P.2d 676, 678 (1972) (discussing the right to be present in the context of a felony charge).

Generally, a felony conviction will be set aside if the defendant is absent from trial. *Crosby v. United States*, 506 U.S. 255, 259 (1993). The Supreme Court has acknowledged only two exceptions to this general rule. First, in noncapital trials, a defendant may waive his right to be present " 'if, *after the trial has begun in his presence,* he voluntarily absents himself . . . . ' " *Id.* at 260 (emphasis in original) (quoting *Diaz v. United States*, 223 U.S. 442, 455 (1912)). Second, "a defendant can lose his right to be present at trial if, after being warned that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Illinois v. Allen*, 397 U.S. 337, 343 (1970).

In Idaho, these constitutional principles are reflected in Idaho Criminal Rule 43(c), which provides in relevant part:

> (1) *In General.* A defendant who was initially present at trial or other proceeding waives the right to be present under the following circumstances:
>
>> (A) when the defendant is voluntarily absent after the trial has begun, regardless of whether the court informed the defendant of an obligation to remain during trial; or
>>
>> (B) when the court warns the defendant that it will remove the defendant from the courtroom for disruptive behavior and the defendant continues to act in a manner so disorderly, disruptive and disrespectful as to substantially impede or make impossible the orderly conduct of the trial or other proceeding.

I.C.R. 43(c)(1)(A)–(B).

Although the Sixth Amendment right to be present at one's own trial applies in all felony criminal cases, we have not addressed whether an identical right also extends to contemnors in criminal contempt proceedings. As Wife notes, Idaho Criminal Rule 43(c) does not apply to contempt proceedings. *See* I.R.C.P. 75(n) ("The Idaho Criminal Rules do not apply" to nonsummary contempt proceedings.). Moreover, there does not appear to be caselaw from the Supreme Court of the United States that explicitly addresses a *contemnor's* right to be present at his or her own trial or, more specifically, if the requirements for waiving such right are co-extensive with the requirements of Idaho Criminal Rule 43(c). And, in certain past decisions, the Supreme Court has emphasized that procedural safeguards for contempt do not derive from the Sixth Amendment; instead, they arise under traditional notions of due process. *See, e.g.*, *Levine v. United States*, 362 U.S. 610, 616 (1960) ("Procedural safeguards for criminal contempts do not derive from the Sixth Amendment. Criminal contempt proceedings are not within 'all criminal prosecutions' to which that amendment applies."). Thus, to determine whether the magistrate court violated Husband's right to be present, we must first determine whether a contemnor's right to be present at a criminal contempt trial is co-extensive with a criminal defendant's right to be present under the Sixth Amendment, or whether a willful absence, standing alone, is sufficient to waive this right.

The principal case addressing this issue is the Texas Supreme Court's decision in *Ex Parte Johnson*, 654 S.W.2d 415 (Tex. 1983). There, the Texas Supreme Court determined that the Sixth Amendment right to be present applied to contemnors based on the Supreme Court's expansion of the Sixth Amendment right to jury trials in criminal contempt proceedings:

> Earlier, in *Bloom v. Illinois*, *supra*, the Supreme Court stated "criminal contempt is a crime in every fundamental respect," and held the sixth amendment right to jury trial was constitutionally guaranteed to alleged criminal contemnors in cases of "serious" contempts. [391 U.S. 194, 201, 211 (1968)]; *see also Muniz v. Hoffman*, [422 U.S. 454 (1975)], and cases cited therein. Application of this sixth amendment right in a criminal contempt proceeding clearly indicates that other sixth amendment protections may be available to criminal contemnors.
>
> . . . .
> We perceive no meaningful distinction between an individual's rights which are at stake in a constructive criminal contempt hearing . . . and those at stake in an ordinary criminal trial where confinement is a possible penal sanction. Accordingly, we hold persons charged with criminal contempt . . . are constitutionally guaranteed the right to be present at trial and confront witnesses.

9

*Id.* at 420–21 (footnote omitted). The Texas Supreme Court further explained that the unconditional penalty involved in that case, which the statute described as "petty," was "of no consequence" because Sixth Amendment "rights are not dependent on whether the offense is classified as 'serious' or 'petty' "—with the exception of the right to trial by jury. *Id.* at 421 n.3 (first citing *Ex parte Werblud*, 536 S.W.2d 542 (1976); and then citing *Argersinger v. Hamlin*, 407 U.S. 25, 28 (1972)).

Ultimately, the Texas Supreme Court reversed the contempt court's judgment because nothing in the record showed that the contemnor in that case was present for the commencement of trial and, therefore, "there could be no affirmative finding by the trial court that [the contemnor] waived his right to be present and participate in trial." *Id.* at 422. The court explained that the proper procedure for addressing an absent contemnor was issuing a writ of attachment:

> We do not suggest alleged criminal contemnors may frustrate the ends of justice by intentionally failing to appear at show cause hearings. In view of the record before us, it may well be that Johnson's failure to appear at the show cause hearing constitutes an additional contempt for which he may be tried in addition to any retrial that may be had on the original alleged contempt. Habeas corpus is not, after all, a bar to reprosecution of any offense.
>
> Accordingly, we hold that where an individual is cited for criminal contempt and fails to appear at the appointed time and place, the proper procedure is to bring the individual into court under a capias or writ of attachment. This requirement imposes no substantial burden on the trial court because persons tried and sentenced in absentia must be arrested and brought before the court sooner or later. The trial court erred in proceeding with the show cause hearing in the absence of Johnson. Johnson is ordered discharged.

*Id*. (footnote omitted).

We agree with the Texas Supreme Court's analysis. Its decision in *Johnson* is consistent with the United States Supreme Court's expansion of criminal procedure protections in contempt actions. As the Supreme Court stated in *Young v. United States ex rel. Vuitton et Fils S.A.*, "[o]ur insistence on the criminal character of contempt prosecutions has been intended to rebut earlier characterizations of such actions as undeserving of the protections normally provided in criminal proceedings." 481 U.S. 787, 800 (1987). Therefore, we hold that the Sixth Amendment protects a contemnor's right to be present at his criminal contempt trial to the same extent that it protects a criminal defendant's right to be present at his trial. We further conclude that the requirements for waiving this right are subject to the same procedural protections discussed in *Crosby*, 506 U.S. 255, and *Allen*, 397 U.S. 337.

10

Accordingly, a trial court can only proceed with a contempt trial in absentia if the contemnor (1) "had sufficient notice to appreciate the criminal nature of the proceeding against him"; and (2) "knowingly, intelligently, and voluntarily waived his right to be present and participate at trial." *In re Johnson*, 654 S.W.2d at 421 (citations omitted). In this case, the magistrate court determined that Husband's failure to appear was "willful" based on (1) the alternative transportation options available to Husband, such as Uber, taxi, friends or family; (2) his ability to appear through the Zoom link or phone call; and (3) his lack of meaningful participation during the pretrial conference. However, the magistrate court never explicitly found that Husband knowingly, intelligently, and voluntarily waived his right to be present at the contempt trial. Without this finding and based on Husband's absence at the commencement of the trial, we conclude the magistrate court erred by proceeding with the contempt trial, regardless of whether Husband's absence was willful. Instead, the magistrate court should have issued a writ of attachment and reset the contempt trial for a later time. *Id.* at 422.

Wife cites to *Reeves v. Reynolds* (*In re Contempt of Reeves*), 112 Idaho 574, 733 P.2d 795 (Ct. App. 1987), for the proposition that a magistrate court may impose criminal sanctions, including incarceration, despite the absence of the contemnor. Wife's reliance on *Reeves* is misplaced. In that case, Reeves was an attorney representing a wife in a divorce proceeding who advised his client not to comply with a restraining order because he believed the restraining order was "no good." 112 Idaho at 576, 733 P.2d at 797. Consequently, the opposing party filed a motion for a contempt order against Reeves and his client, supported by affidavits, but Reeves failed to appear on several occasions for the date of the hearing on the motion. *Id.* The wife obtained substitute counsel, and the motion for contempt was dismissed as to her, but not as to Reeves. *Id.* Ultimately, the magistrate court proceeded with Reeves's hearing despite his absence, found Reeves in contempt, and initially ordered him to pay a fine. *Id.* Reeves subsequently moved for reconsideration, which the magistrate court denied. *Id.* at 576–77, 733 P.2d at 797–98. On appeal, Reeves argued in pertinent part that the magistrate court denied him the opportunity to speak in his own defense and asserted that he did not realize that his attendance was required at the hearing because he no longer represented the wife. *Id.* at 582, 733 P.2d at 803.

The Court of Appeals accepted as true that Reeves believed he was not required to attend the hearing but determined that this belief was unreasonable and rejected his argument. *Id.* The court explained that, as a licensed attorney, "Reeves should have been aware of the significance

11

of a motion for order of contempt" and "[i]f he had any doubt whether to attend, a timely inquiry to the court could have dispelled that doubt." *Id*. at 583, 733 P.2d at 804. Moreover, the court noted that (1) Reeves was provided with the opportunity to cross examine the affiants and argue against the merits of the motion on reconsideration, (2) Reeves did not contest any of the facts upon which the contempt determination was based in his affidavit in support of reconsideration, and (3) Reeves did not include the transcript of the reconsideration hearing and, thus, the court could not determine if he was denied the opportunity to testify on his own behalf. *Id*. at 582–83, 733 P.2d at 803–04. Ultimately, the Court of Appeals determined that the underlying procedures were "adequate" and affirmed the magistrate court's order of contempt. *Id*.

Unlike the contempt proceedings in *Reeves*, any deficiencies in the contempt proceedings in this case were not cured through a subsequent evidentiary hearing. Husband did not cross examine Wife (who was the only witness to testify during the contempt hearing), nor did he challenge the merits of Wife's motion for an order of contempt. While there is no dispute that Husband had adequate notice of the hearing, this alone was insufficient to establish a knowing, intelligent, and voluntary waiver of his right to be present, as discussed above.

Next, Wife argues the magistrate court would be powerless to shut down defiant behavior or incarcerate Husband for his abuse of the judicial process if he is permitted to stall the proceedings by failing to show up for trial or refusing to hire counsel. We agree with Wife that Husband's conduct throughout this case is unacceptable. As the district court noted, Husband has a record of poor behavior, such as ignoring basic responsibilities to his ex-wife and family, dishonesty, and boorish conduct with the process server. It is also apparent that Husband has taken multiple opportunities to frustrate Wife's efforts to enforce the divorce decree, and that he willfully and deliberately failed to appear at his own contempt trial and instead choose to enjoy various breweries throughout Utah. However, we do not agree that Wife, or the magistrate court, are without means to enforce the divorce decree or contempt order under these circumstances.

First, criminal contempt proceedings are not the only avenue for enforcing a court order. Unlike criminal contempt proceedings, civil contempt proceedings do not afford contemnors federal constitutional safeguards that are coextensive with the safeguards afforded to criminal defendants. Instead, "civil contempt sanctions may be imposed upon notice and an opportunity to be heard." *Camp v. E. Fork Ditch Co.*, 137 Idaho 850, 861, 55 P.3d 304, 315 (2002) (citing *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994)). "Civil contempt

sanctions can include incarceration conditioned on purging the contempt, a daily fine conditioned on the same, or both." *Abell v. Abell*, 172 Idaho 531, 540, 534 P.3d 957, 966 (2023) (internal citations omitted). Second, a writ of attachment may be used when necessary to ensure the attendance of contemnor at his or her contempt trial, as discussed above. And if the contemnor attempts to manipulate the process by refusing to hire counsel, this conduct may be considered when determining whether the contemnor knowingly or voluntarily waived his or her right to counsel. *See Ayers v. Hall*, 900 F.3d 829, 836 (6th Cir. 2018) ("Defendants who fire or refuse to hire attorneys even after being warned that they may be required to proceed pro se if they continue their dilatory conduct, for instance, may be deemed to have validly waived their right to counsel." (citation omitted)); *United States ex rel. Davis v. McMann*, 386 F.2d 611, 618–19 (2d Cir. 1967) ("Though a defendant has a right to select his own counsel if he acts expeditiously to do so, he may not use this right to play a 'cat and mouse' game with the court, or by ruse or stratagem fraudulently seek to have the trial judge placed in a position where, in moving along the business of the court, the judge appears to be arbitrarily depriving the defendant of counsel." (internal citations omitted)).

For these reasons, we hold that the magistrate court erred by proceeding with the Husband's contempt trial in absentia. Given this ruling, we need not address the district court's decision to vacate the contempt order in part based on Husband's alleged waiver of the right to counsel. The district court's decision is reversed and the case is remanded with instructions to vacate the magistrate court's order of contempt and remand the matter to the magistrate court for further proceedings.

## B. The district court's failure to address Wife's request for attorney fees was harmless.

On cross-appeal, Wife contends the district court erred by failing to address her request for an award of her attorney fees on intermediate appeal. Below, Wife requested attorney fees under Idaho Code section 12-121 because Husband brought the appeal frivolously, unreasonably, and without foundation. Wife argued that Husband's appeal was simply a request "to delay [Husband]'s accountability" and "second guess the determination of the trial court." Wife further requested attorney fees under paragraph 30 of the Judgment and Decree of Divorce, which states: "If either party has to bring an action to enforce the Decree of Divorce entered in this case, then this [c]ourt shall award to the prevailing party his or her own attorney fees and costs."

13

Under Idaho Code section 12-121, a "judge may award reasonable attorney[]s fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121. Here, the district court never addressed Wife's request for attorney fees. However, because we concluded the magistrate court erred by holding Husband's contempt trial in absentia—and the district court erred by affirming that decision—the failure to address Wife's request for attorney fees is harmless. Husband's appeal was not pursued frivolously, unreasonably, or without foundation since he has prevailed in full.

**C. No fees are awarded on appeal because a prevailing party has not yet been determined.**

Wife also requests attorney fees on appeal to this Court on the same bases discussed above in section B. However, that request is now premature since there is not a prevailing party at this juncture. Furthermore, the magistrate court's judgment awarding attorney fees below must also be vacated given today's decision. Because we remand this case for further proceedings, the issue of attorney fees on appeal under the decree may be considered by the magistrate court at the conclusion of the case. *Portfolio Recovery Assocs., LLC. v. MacDonald*, 162 Idaho 228, 236, 395 P.3d 1261, 1269 (2017).

## IV. CONCLUSION

For the reasons set forth above, we reverse the district court's intermediate appellate decision and remand with instructions to vacate the magistrate court's order of contempt and judgment, and remand the matter to the magistrate court for further proceedings. We decline to award either party attorney fees on appeal. Costs are awarded to Husband under Idaho Appellate Rule 40(a).

Chief Justice BEVAN, and Justices MOELLER, ZAHN and MEYER CONCUR.