# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 49772

DEBRA ABELL,     )
           )
 Plaintiff-Respondent,  )
           )   **Boise, May 2023 Term**
v.            )
           )   **Opinion Filed: August 22, 2023**
STEVEN ABELL,    )
           )   **Melanie Gagnepain, Clerk**
 Defendant-Appellant.  )
           )

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. John T. Mitchell, District Judge.

The judgment of the district court is <u>vacated</u>, its decisions underlying its judgment are also <u>vacated</u>, and the case is <u>remanded</u> for further proceedings.

Lukins & Annis, P.S., Coeur d'Alene, Idaho, for Appellant.

Witherspoon Brajcich McPhee, PLLC, Coeur d'Alene, Idaho, for Respondent.

———————————

BRODY, Justice.

This appeal concerns a non-summary contempt proceeding arising out of a divorce, and former litigation in Oregon over spousal support Steven Abell owed his ex-wife Debra Abell. After a judgment of contempt was entered against him in Oregon for failure to pay support, Steven allegedly continued to refuse to pay Debra. Roughly one year later, Debra brought the underlying contempt proceeding, charging Steven with contempt for failure to comply with the payment terms in the Oregon contempt judgment, and requesting relief from the district court in northern Idaho, where Steven resided. The district court found Steven in willful contempt of the Oregon contempt judgment, and imposed an unconditional sanction of $5,000, making both determinations through a summary judgment procedure. Steven appeals, assigning error to the sanction imposed, and to other decisions by the court in the underlying proceeding.

For the reasons set forth below, the sanction imposed by the district court was criminal in

nature, and it was imposed in error because Steven was not afforded certain protections owed an alleged contemnor in a criminal contempt proceeding. In addition, regardless of whether a civil or criminal sanction is sought or imposed, when an alleged contemnor is not in default and denies the charge of contempt, the non-summary contempt proceeding cannot be adjudicated through a summary judgment procedure. Idaho Rule of Civil Procedure 75 requires a trial. Accordingly, the district court's judgment of contempt is vacated, its decisions underlying its judgment are also vacated, and the case is remanded for further proceedings that must start anew, at the initial pleading stage, in order to proceed appropriately.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Debra Abell and Steven Abell were married for roughly thirty-one years in Oregon before they stipulated to a dissolution of their marriage, entered on June 9, 2015 ("Dissolution Judgment"). At the time of their divorce, Debra was 54 with an earning capacity of minimum wage, and Steven was 60 with an active income of $16,666 per month. As a part of their divorce, Steven agreed to, among other things, pay Debra $3,500 per month in spousal support. Steven was to pay Debra spousal support "until further order of the court, or death of a party[,]" with 9% interest accruing from the due date until paid if delinquent.

Two years later, in December 2017, Steven married Pamela. Another two years after that, Steven and Pamela moved to Idaho, and purchased a new residence in Post Falls, Idaho, in March 2019. Steven purportedly quitclaimed any interest in the new residence to Pamela the day of the purchase. Roughly one month after moving to Idaho, in April 2019, Steven stopped paying Debra spousal support and filed a motion with the Oregon circuit court to terminate his spousal support obligation. During the ensuing proceedings, and even after an order to compel discovery issued by the Oregon circuit court, Steven openly refused to produce documents requested during discovery regarding his assets and those of his second wife, Pamela. After a hearing, the Oregon circuit court found that Steven had "willfully" violated the order to compel and left the court with "no alternative but to order extreme measures" based on his "conduct and because of the extreme prejudice to [Debra] in litigating" against Steven's motion to terminate spousal support. From this, the Oregon circuit court dismissed Steven's motion with prejudice and entered a judgment against Steven in favor of Debra for her attorney's fees and costs in the amount of $16,091.50, plus interest of 9% per year.

Two months later, in November 2020, the Oregon circuit court held a hearing on an outstanding motion from Debra to hold Steven in contempt related to his failure to pay spousal support to Debra over roughly the last year and a half. Steven knew of the hearing, but "voluntarily" chose not to appear. Two months after the hearing, in January 2021, the Oregon circuit court issued its written decision ("Oregon Contempt Judgment") and found Steven in contempt for failure to pay owed spousal support from April 23, 2019, through to the date of the contempt hearing (November 12, 2020), totaling $71,200.84.

The Oregon circuit court also found that Steven had the present "ability to pay his spousal support obligation" to Debra based on the following findings: Steven "voluntarily quit his job in February 2019 making almost $200,000 per year without justification or reason"; Steven's "claim that he had depression and anxiety that prevented him from continuing his job from which he voluntarily resigned is not supported by the evidence"; Steven had a joint bank account with his second wife, Pamela, with deposits "that averaged over $22,000 per month from January 2018 through June 2019"; Steven's second wife, Pamela, was earning over $130,000 per year; Pamela had purchased a house in Post Falls, Idaho, for her and Steven; and Steven had a "401(k) plan with $47,000 in it as of December 31, 2019," which he could have "withdrawn without penalty to pay" his spousal support owed to Debra.

The Oregon circuit court ordered Steven to, among other things, pay the outstanding $71,200.84 owed within 60 days. The circuit court also entered a civil sanction against Steven for $1,000 that would be conditionally imposed every 30 days Steven failed to pay the outstanding amount after those 60 days, plus interest of 9% per year. A few months later, the circuit court entered a supplemental judgment, awarding Debra $6,690 for incurred attorney's fees and costs, plus interest of 9% per year ("Oregon Supplemental Judgment").

While this litigation was ongoing in Oregon, on August 3, 2020, Debra filed an Affidavit and Notice of Filing Foreign Judgment to domesticate—in Idaho—the Oregon judgment dissolving the marriage (the Dissolution Judgment). Her filing attached the Dissolution Judgment, which provided for the underlying divorce and award of spousal support to Debra. Roughly one and a half years later (one year after the Oregon Contempt Judgment was entered), on January 4, 2022, Debra filed an Affidavit and Notice of Filing Foreign Judgments to domesticate three other Oregon judgments in Idaho. The Oregon judgments in that filing related

3

to Debra's attorney's fees and costs awarded in the Oregon litigation, with one of the judgments awarding Debra fees and costs in the amount of $16,091.50, as referenced above.

Two days later, on January 6, 2022, Debra filed another Affidavit and Notice of Filing Foreign Judgments, this time including the Oregon Contempt Judgment and the Oregon Supplemental Judgment to be domesticated in Idaho. Three months later, on March 2, 2022, Debra commenced the underlying contempt proceeding by filing a "Motion/Charge for Non-Summary Contempt" against Steven, and the above filings were later consolidated into one case, the underlying action now on appeal.

Debra's motion included one charge of contempt: Steven was "violating the terms and conditions of [the Oregon Contempt Judgment] by refusing to comply with the court ordered payment terms related to spousal support." According to Debra's declaration, filed concurrently with her motion and charge of contempt, Steven had failed in the last year to make any payments towards the principal sum of $71,200.84 in spousal support due under the Oregon Contempt Judgment. Although she did not bring a separate charge of contempt for failure to pay other support under the Dissolution Judgment, Debra further alleged that Steven owed her an additional $54,250 in spousal support from the date of the Oregon Contempt Judgment through February 28, 2022, i.e., two days before she filed her motion.

Notably, Debra's motion did not charge Steven with contempt for failure to pay the $16,091.50 judgment for attorney's fees and costs that she was awarded in the Oregon litigation, or the $6,690 supplemental judgment in fees and costs she was awarded related to the Oregon Contempt Judgment. It is unclear from the record whether Steven ever paid these domesticated Oregon judgments. Otherwise, related to the one charge of contempt Debra did bring, Debra's motion requested that the Idaho district court impose "civil sanctions" against Steven as provided by Idaho Rule of Civil Procedure 75 and Title 7, Chapter 6 of the Idaho Code, as well as an award for any attorney's fees and costs incurred in prosecuting her charge of contempt.

Although direct evidence of it is not in the record, on March 11, 2022, seven days after Debra filed her contempt motion and charge, Steven apparently made a partial payment to Debra. The amount of this payment is unclear. At one point in her briefing, Debra states the partial payment was $49,350.92, but in her later declaration in support of contempt sanctions against Steven, she represents the partial payment was $10,254.00. Nevertheless, roughly two weeks after this partial payment, on March 28, 2022, the district court in Idaho held an "arraignment"

4

hearing at which Steven made his initial appearance pro se and indicated that he was "contesting" the new charge of contempt. At the hearing, the district court only advised Steven of the risks of representing himself pro se, i.e., that Steven would be assumed to have working knowledge of the Idaho Rules of Civil Procedure, applicable statutes, and applicable case law. The district court did not advise him of any other rights. Otherwise, the district court, as well as Debra in her later briefing, treated Steven's "contesting" of the charge as a general denial and the matter was set for trial on May 9, 2022, roughly one and a half months later. The district court did not specify if it was setting a bench trial or jury trial.

Fourteen days after the "arraignment" hearing, on April 11, 2022, Debra filed a "Motion for Judgment on the Pleadings" under Idaho Rule of Civil Procedure 12(c), and argued that based on the evidence in the record along with Steven's failure to timely assert any affirmative defenses to the contempt charge under Rule 75(h), she was entitled to judgment as a matter of law because it was undisputed that Steven was "again in contempt" for failing to comply with the payment terms of the Oregon Contempt Judgment.

Four days later, on April 15, 2022, counsel appeared for Steven, and filed a document denying the charge of contempt and asserting two affirmative defenses under Rule 75(h): Steven was "[1] unable to comply with the [Oregon Contempt Judgment] at the time of the violation and/or [2] lacks the present ability to comply with the [Oregon Contempt Judgment]." Seven days later, on April 22, 2022, Steven responded to Debra's "Motion for Judgment on the Pleadings" through his counsel and argued that based on his general denial to the contempt charge, Debra's motion must be denied because there is a genuine dispute of fact on contempt for trial. Four days after that, Steven's counsel formally requested leave from the district court under Rule 75(h)(1) to assert Steven's two affirmative defenses.

Two days later, at a hearing on April 28, 2022, relying only on Debra's declaration and the Oregon Contempt Judgment already in the record, the district court granted Debra's "Motion for Judgment on the Pleadings" and denied Steven's motion for leave to assert two affirmative defenses. Steven was not permitted to present testimony or evidence at this hearing. The district court then ordered Debra's counsel to prepare the written order, which later reflected that the district court had found Steven in contempt because he had "willfully refused to comply with the spousal support payment terms ordered in the Oregon Contempt Judgment[.]"

5

Four days *after* the hearing, on May 2, 2022, Steven executed a "Postnuptial Agreement" with his second wife, Pamela, and his counsel notarized the document. Curiously, the Postnuptial Agreement indicates it was "made" on April 15, 2022—two weeks earlier, the same day Steven's counsel appeared, and *before* Steven was found in contempt at the hearing on April 28, 2022. The Postnuptial Agreement purports to memorialize a former separation of Steven's debts and assets from Pamela's debts and assets, and also purports to transfer all of Steven's community property interests in real property, wages, income, earnings, and retirement benefits, acquired during his second marriage with Pamela, to Pamela as her sole and separate property.

Three days later, on May 5, 2022, Debra and her counsel filed declarations in support of a memorandum requesting the "civil" sanction of incarceration conditioned on Steven purging himself of his contempt, i.e., conditioned on Steven complying with the payment terms underlying the Oregon Contempt Judgment. According to Debra, Steven owed $139,892.58 in total unpaid spousal support with accrued interest, dating from March 2019 to April 2022, i.e., both including *and* adding to the balance owed under the Oregon Contempt Judgment. Because the single contempt charge related only to Steven's failure to pay the principal sum of $71,200.84 in spousal support, along with accrued interest and the $1,000 fines, the record on appeal is unclear on the true balance Steven owed to Debra.

Nevertheless, four days later, on May 9, 2022, the district court held a hearing to determine what sanction to impose, and to consider a motion from Steven asking the court to reconsider its grant of Debra's Motion for Judgment on the Pleadings. Steven was not permitted to present evidence or testimony at this hearing. Instead, the district court received oral argument and briefing, denied Steven's motion for reconsideration, and essentially reiterated its finding that Steven was in contempt. As for the sanction against Steven, the district court declined to impose conditional incarceration, reasoning that such a sanction was "criminal" in nature and could not be imposed based on the process afforded Steven in the underlying proceeding.

Instead, the district court imposed an unconditional fine of $5,000, labeled it a "civil" sanction, and awarded Debra reasonable attorney's fees and costs. The district court again ordered Debra to prepare a written order, which in two separate written orders, reflected the denial of Steven's motion for reconsideration, the denial of leave for Steven to assert affirmative defenses under Rule 75(h)(1), the finding of "willful" contempt, the unconditional sanction, and the award of attorney's fees and costs to Debra. Steven timely appealed on multiple grounds.

6

## II.    STANDARD OF REVIEW

"The sanction or penalty imposed under a contempt order is reviewed under an abuse of discretion standard." *In re Weick*, 142 Idaho 275, 278, 127 P.3d 178, 181 (2005). However, whether the sanction imposed was civil or criminal in nature is reviewed de novo, and relatedly, whether the underlying proceedings conformed to the applicable federal constitutional protections attendant to the nature of the sanction imposed is also reviewed de novo. *See Camp v. E. Fork Ditch Co.*, 137 Idaho 850, 860–66, 55 P.3d 304, 314–20 (2002). As for the proper procedure governing non-summary contempt proceedings under Idaho Rule of Civil Procedure 75, "[t]his Court exercises free review over questions regarding the interpretation of the Idaho Rules of Civil Procedure." *Ward v. State*, 166 Idaho 330, 332, 458 P.3d 199, 201 (2020) (quoting *Haight v. Idaho Dep't of Transp.*, 163 Idaho 383, 387, 414 P.3d 205, 209 (2018)).

## III.    ANALYSIS

Steven assigns four points of error to the non-summary contempt proceeding below and the judgment of contempt entered. First, Steven argues that the district court erred by granting "judgment on the pleadings" to Debra that Steven was willfully in contempt for failing to comply with the Oregon Contempt Judgment, and by declining to hold a trial, when Steven generally denied the charge of contempt to create a disputed issue of material fact. Second, Steven maintains the district court abused its discretion when it denied his motion for leave to assert untimely affirmative defenses to the charge of contempt outside the seven-day window provided by Idaho Rule of Civil Procedure 75(h). Third, Steven argues the district court erred in finding Steven's motion for reconsideration on Debra's motion for judgment on the pleadings untimely, and by further denying it on the merits. Finally, Steven contends the district court erred when it imposed an unconditional monetary sanction, which was a criminal sanction—not a civil sanction—in the absence of the process required for imposing criminal sanctions under Rule 75.

Steven is correct as to his fourth assignment of error. The district court erred in imposing an unconditional monetary sanction, i.e., a criminal sanction, without affording Steven the underlying process required by Rule 75 and the federal constitution. Due to the exceptional nature of contempt proceedings, the error of imposing a criminal sanction through what was effectively a summary judgment adjudication unavailable under Rule 75 infected the entire underlying proceeding. Thus, the district court's judgment of contempt is vacated, its decisions underlying its judgment are vacated, and the contempt charge against Steven must begin anew on

7

remand, from the initial pleading stage. Because we reach this conclusion as to Steven's fourth assignment of error, we need not address his remaining alleged errors.

**A. The district court erred in imposing an unconditional monetary sanction, which was criminal in nature, because the underlying process was fundamentally deficient.**

"[A] contempt proceeding is sui generis," i.e., of its own class. *State v. Palmlund*, 95 Idaho 150, 153, 504 P.2d 1199, 1202 (1972). It is "an extraordinary proceeding and should be approached with caution." *In re Weick*, 142 Idaho at 281, 127 P.3d at 184. Unlike other proceedings that are wholly civil or criminal in nature, *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441 (1911), the ultimate civil or criminal nature of a non-summary contempt proceeding, which results in a finding and judgment of contempt, "is based upon the penalty imposed *at the conclusion* of the proceedings." *Camp*, 137 Idaho at 864, 55 P.3d at 318 (emphasis added). In other words, a contempt proceeding is inherently rear-facing or reflective, and "[w]hether contempt is criminal or civil does not depend upon the nature of the lawsuit in which the contempt proceedings are brought." *See id.* at 862, 55 P.3d at 316. Because of this, the nature of the sanction ultimately imposed—civil or criminal—is critical; the sanction imposed reflectively determines what federal constitutional rights were applicable and required during the earlier and underlying proceedings. *Id.* at 860–61, 55 P.3d at 314–15 (listing the federal constitutional rights that apply to criminal contempt proceedings).

Whether the imposed contempt sanction, as well as the underlying contempt proceeding, are criminal or civil in nature turns on whether the sanction is unconditional or conditional. *Id.* at 863–65, 55 P.3d at 317–19. "[A]n *unconditional* penalty is a criminal contempt sanction, and a *conditional penalty* is a civil contempt sanction." *Id.* at 863, 55 P.3d at 317 (emphasis added) (citation omitted) (footnoted omitted). A sanction is criminal and "unconditional if the contemnor cannot avoid any sanction by complying with the court order violated." *Id.* Idaho Code section 7-610 provides for "criminal contempt" sanctions in the form of a "fine of up to $5,000 and/or by incarceration in jail for up to five days, unless the contempt is nonpayment of child support in which case the jail sentence can be up to thirty days." *Camp*, 137 Idaho at 865, 55 P.3d at 319.

In contrast, a sanction is civil and "conditional if the contemnor can avoid any sanction, including probation, by doing the act he had been previously ordered to do." *Id.* at 864, 55 P.3d at 318. Civil contempt sanctions can include incarceration conditioned on purging the contempt,

8

I.C. § 7-611; a daily fine conditioned on the same, *Camp*, 137 Idaho at 864, 55 P.3d at 318, or both. Incarceration is civil in nature only "[i]f the contempt consisted of the failure to perform an act that is *still* within the contemnor's power to perform[.]" *Id*. at 865, 55 P.3d at 319 (emphasis added); *see* I.C. § 7-611 (allowing conditional imprisonment if the "contempt consists in the omission to perform an act which is yet in the power of the person to perform"). In other words, for a sanction to be "civil" there must be a factual basis for finding that the contemnor "carr[ies] the key of his prison in his own pocket[,]" *Maggio v. Zeitz*, 333 U.S. 56, 68 (1948) (alteration added) (citation omitted), or has "it in his power to avoid any penalty" imposed, *Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 633 (1988). Thus, for a contempt sanction and the underlying contempt proceeding to be "civil," the trial court must make a finding, supported by substantial evidence, that the contemnor has a "*present* ability to comply with the order violated." *Camp*, 137 Idaho at 865, 55 P.3d at 319 (emphasis added).

In this case, after finding that Steven "willfully refused to comply" with the Oregon Contempt Judgment, the district court's written decision imposed an unconditional "fine of $5,000" and ordered Steven to pay "said fine within ten (10) days" of the entry of judgment. The district court's ruling from the bench at the May 9, 2022, hearing was no different, where the district court specified that the fine was "not conditional; it's imposed[.]" Although the district court inaccurately labeled the fine as a "civil sanction related to [Steven's] non-summary contempt of court," the labels "affixed either to the proceeding or to the relief" do not control or "defeat the applicable protections of federal constitutional law" in a non-summary contempt proceeding. *Camp*, 137 Idaho at 863, 55 P.3d at 317 (quoting *Hicks*, 485 U.S. at 631). Here, with the sanction imposed, there was nothing Steven could do to avoid paying the $5,000 fine. Accordingly, the sanction imposed by the district court was unconditional and thereby criminal in nature. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994) ("[A] flat, unconditional fine, totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance." (quotation marks omitted)).

Because a criminal contempt sanction was imposed, the underlying proceedings were required to afford Steven the numerous protections guaranteed under the federal constitution that are applicable in non-summary criminal contempt proceedings. *Camp*, 137 Idaho at 860, 55 P.3d at 314. For example, unless the record otherwise reveals that Steven was "quite aware that a

criminal contempt was charged[,]" *United States v. United Mine Workers of Am.*, 330 U.S. 258, 297 (1947), Steven had the right to notice at his arraignment hearing that a criminal sanction was being sought, *Gompers*, 221 U.S. at 445–46; *see* I.R.C.P. 75(f)(1)(A). Steven also had the right to a public trial, to cross-examine witnesses, and "to call witnesses to testify both in complete exculpation or in extenuation of the offense and in mitigation of the penalty to be imposed." *Camp*, 137 Idaho at 860–61, 55 P.3d at 314–15 (citing cases); *see* I.R.C.P. 75(i)(2) (listing the trial rights that must be afforded to impose a criminal sanction in a contempt proceeding); I.R.C.P. 75(*l*)(2) (explaining the right to call witnesses in mitigation, to be heard in mitigation, and to otherwise make amends with the court before a criminal sanction is imposed).

Notably, Steven also would have had the right to a *jury* trial if the "maximum penalty authorized by law, or actually imposed, exceeds six months [of] incarceration" or if the trial court imposed "consecutive sentences totaling more than six months in length[.]" *Camp*, 137 Idaho at 860, 55 P.3d at 314; *see also* I.R.C.P. 75(i)(1) ("The trial will be before the court without a jury, provided that if the respondent is charged with multiple counts tried in one proceeding, the court cannot impose consecutive criminal sanctions totaling more than 6 months in jail unless the respondent was given, or voluntarily waived, the right to a jury trial.").

Here, there is nothing in the record showing that Steven was advised by the district court, or was even aware, that criminal contempt was charged. To the contrary, Debra initiated the underlying proceedings with a motion and charge of contempt that requested "civil" sanctions. Consistent with this, throughout the proceedings, Debra requested the "civil" sanction of conditional incarceration based on Steven's alleged present ability to comply with the payment terms of the Oregon Contempt Judgment. Steven was also not afforded the right to a public trial, to cross-examine witnesses, or to put on evidence or call witnesses in mitigation of his alleged contempt to make amends with the court before the sanction was selected and imposed. Instead, he was found in "willful" contempt through a summary judgment procedure, based solely on evidence in the record, and denied any opportunity to put on evidence or challenge evidence offered by Debra in a trial-like evidentiary hearing. Thus, the unconditional criminal contempt sanction imposed by the district court was plainly entered in error.

Due to the unique and reflective nature of non-summary contempt proceedings, we cannot simply remand this matter back to the district court to enter an appropriate sanction. Not only was there no affirmative finding by the district court of Steven's "present" ability to comply

with the Oregon Contempt Judgment as would be required to impose a "civil" sanction, but the record is also devoid of any showing that the rights attendant to a criminal proceeding were ever provided to Steven. Additionally, as explained further below, the summary judgment procedure used by the district court to adjudicate Steven's alleged contempt was also in error.

**B.    Idaho Rule of Civil Procedure 75 requires non-summary contempt proceedings to be adjudicated through a trial, unless the alleged contemnor is in default.**

Consistent with Idaho Rule of Civil Procedure 75(c), Debra commenced the underlying contempt proceeding by filing a "Motion/Charge for Non-Summary Contempt Against Defendant Steven Abell," along with supporting factual allegations outside the pleading. Debra's motion contained one charge of contempt: Steven's alleged willful failure to comply with the payment terms in the Oregon Contempt Judgment. In the Oregon Contempt Judgment, entered roughly one year and two months earlier, Steven was found in contempt for failure to pay outstanding spousal support to Debra, *and* found to have the present ability (at that time) to purge himself of his contempt. The Oregon circuit court gave Steven 60 days to purge his contempt, and ordered, among other things, a conditional "civil" penalty of $1,000 to be imposed every 30 days if he did not purge his contempt within 60 days.

Roughly one month after Debra filed her Idaho motion for contempt, the district court held an "arraignment" hearing. Steven appeared pro se, and responded to the court's questions, indicating that he was "contesting" the new charge of contempt. The district court as well as Debra in her later briefing, treated Steven as entering a general denial to the charge, and the matter was set for trial roughly one and a half months out. Fourteen days after the arraignment hearing, after Steven had made no filings, Debra filed a "Motion for Judgment on the Pleadings" under Idaho Rule of Civil Procedure 12(c) and argued that based on the evidence in the record, it was undisputed that Steven was "again in contempt" for failing to comply with the payment terms of the Oregon Contempt Judgment.

Debra argued, in addition to her collateral estoppel argument, that Steven had waived any affirmative defenses to the new contempt charge by failing to "file and serve a written response within 7 days after entering a plea denying the contempt charged" as required by Idaho Rule of Civil Procedure 75(h)(1). Debra essentially contended that the finding of Steven's then-present ability to comply found in the Oregon Contempt Judgment collaterally estopped Steven from now employing the affirmative defense to a criminal sanction that Steven was "unable to comply

11

with the court order at the time of the alleged violation," I.R.C.P. 75(h)(1)(A). Debra further contended that this affirmative defense, as well as the affirmative defense to a civil sanction that Steven may have lacked "the present ability to comply with" the Oregon Contempt Judgment, I.R.C.P. 75(h)(1)(B), were both precluded by waiver. From this, Debra claimed she was entitled to judgment as a matter of law that Steven was in contempt, and that a "civil" sanction of conditional incarceration be imposed until he complied with the Oregon Contempt Judgment.

To be clear, although the parties and the district court below spoke in terms of Debra moving for "judgment on the pleadings" under Rule 12(c), her motion here is properly understood as a motion for summary judgment under Rule 56. "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." I.R.C.P. 12(d); *Syringa Networks, LLC v. Idaho Dep't of Admin.*, 159 Idaho 813, 823, 367 P.3d 208, 218 (2016). Indeed, Rule 75(c) required Debra to charge contempt by relying on matters outside her pleading and the charge itself, which she did by incorporating her declaration, the Dissolution Judgment, the Oregon Contempt Judgment, the Oregon Supplemental Judgment, and the other domesticated Oregon judgments which were consolidated into the underlying proceeding. Thus, Debra's motion here is properly understood as a motion for summary judgment.

Four days after Debra moved for summary judgment, counsel appeared for Steven. That same day, Steven's counsel entered a formal denial for Steven on the charge. Steven's counsel also noted that Steven intended to assert the two affirmative defenses under Rule 75(h)(1)(A) and (B) that Debra had argued were barred by collateral estoppel or otherwise waived. Seven days later, Steven's counsel responded to Debra's motion for summary judgment, and argued that Steven's general denial of contempt at the arraignment hearing summarily defeated her motion as his denial presented a genuine dispute of material fact that must be resolved through a trial. Four days later, Steven's counsel formally requested leave of the district court under Rule 75(h)(1) to assert Steven's two untimely affirmative defenses to criminal and civil sanctions.

Two days later, at a hearing on April 28, 2022, and apparently relying only on the evidence already offered by Debra in the consolidated record, the district court granted Debra's motion for summary judgment and at the same time denied Steven's motion for leave to assert the two affirmative defenses to criminal and civil sanctions under Rule 75(h)(1)(A) and (B). The district court ordered Debra's counsel to prepare a written order, which ultimately reflected that

the district court had found Steven in contempt because he had "willfully refused to comply with the spousal support payment terms ordered in the Oregon Contempt Judgment[.]"

On May 2, 2022, four days after the hearing at which Debra had been granted summary judgment on her new charge of contempt against Steven, counsel for Steven notarized—and Steven executed—a "Postnuptial Agreement" between Steven and his second wife, Pamela. The Postnuptial Agreement appears to have been "made" roughly two weeks *earlier*—on April 15—the same date Steven's counsel appeared. Yet, the Postnuptial Agreement was apparently held on to and not executed until four days *after* the grant of Debra's summary judgment motion.

The Postnuptial Agreement purports to transfer all of Steven's community property interests in real property, wages, income, earnings, and retirement benefits acquired during the marriage to Pamela, as her sole and separate property, in an alleged attempt to avoid Debra's ability to collect on the Oregon Contempt Judgment, or any further judgment.

Two assets purported to be part of Pamela's "sole and separate" property were a retirement account and an Idaho residence purchased in March 2019, one month before Steven stopped paying Debra spousal support, with an estimated combined value of $900,000. Based on a declaration from Debra's attorney, the Postnuptial Agreement was first produced at Steven's debtor's exam on May 4, 2022, six days after the hearing granting Debra's motion for summary judgment, and two days after the Postnuptial Agreement was executed. Although the exact amount owed—after accounting for Steven's partial payment in March 2022, the $1,000 recurring civil fine underlying the Oregon Contempt Judgment, and the overall accrued interest—is unclear, by the date of the debtor's exam, Debra alleged Steven still owed her $139,892.58 in unpaid spousal support.

Setting the circumstances of the Postnuptial Agreement aside, we must recognize the procedural errors underlying the proceedings below. Steven was not permitted to present evidence or testimony in his defense or in mitigation of his found contempt before or after summary judgment was imposed, including during the hearing on the motion to reconsider. The district court found Steven in contempt, and imposed a criminal sanction, based only on evidence in the record—not live testimony and proffered evidence. Although Steven appeared at the arraignment hearing and was not in default, he was found guilty of criminal contempt without a trial, and criminally sanctioned without the opportunity to present a defense, put on evidence or testimony at a hearing, or cross-examine witnesses.

13

Contrary to this procedure, when a defendant is not in default, and there is a general denial by the defendant to the charge of non-summary contempt, Idaho Rule of Civil Procedure 75 requires any finding of contempt and any sanction to be reached through a trial. Regardless of whether the proceeding is ultimately criminal or civil in nature, nothing in Rule 75 allows for an adjudication of non-summary contempt through a summary judgment procedure.

As Rule 75 explains, if a defendant denies a charge of non-summary civil or criminal contempt, "the matter *must* be set for a trial." *See* I.R.C.P. 75(g)(2) (emphasis added). The defendant also "must be given at least 14 days to prepare for trial, unless otherwise ordered by the court." *Id*. In non-summary civil or criminal contempt proceedings, at the defendant's "first appearance" to answer the charge, the trial court is also required to inform the defendant of, among other things, the "right to a trial" and "right to confront witnesses" against him, "including watching the witnesses testify in court and questioning them[.]" *See* I.R.C.P. 75(f)(1)(D), (E). Indeed, the record does not reflect that Steven was advised of any of his rights as listed in Idaho Rule of Civil Procedure 75(f)(1)(A)–(F). Otherwise, as set out in Rule 75(f)(1)(D), contempt sanctions are only permitted in non-summary proceedings if the defendant either admits to the contempt, "or is found in contempt *following a trial*." I.R.C.P. 75(*l*) (emphasis added).

Rule 75 does incorporate other rules of civil procedure—but only to the extent those other rules are "not in conflict" with Rule 75. *See* I.R.C.P. 75(n). Apart from Rule 75's clear mandate for a trial to make findings and impose any sanctions for contempt, the expedited trial timeline Rule 75 calls for also conflicts with the timing posture typically required of summary judgment motions under Rule 56, where Rule 56 motions "must be filed at least 90 days before the trial date, or filed within 7 days from the date of the order setting the case for trial, whichever is later, unless otherwise ordered by the court." *See* I.R.C.P. 56(b)(1), (2). Rule 75(g)(2) allows for trial on a non-summary contempt charge in as little as *fourteen* days—while Rule 56 generally requires the summary judgment "motion, supporting documents and brief" to be served at least *twenty-eight* days before the date of the hearing. Accordingly, the summary judgment procedure under Rule 56 plainly does not apply, and cannot be employed, to adjudicate non-summary civil or criminal contempt under Rule 75.

Unless contempt charges are brought under Idaho Code section 18-1801 or another criminal statute, Rule 75 provides the governing roadmap for all civil and criminal non-summary

14

contempt proceedings. *See* Hon. Daniel T. Eismann, *Contempt-the Basics and More*, 51 The Advocate 13, 14–15 (Oct. 2008). Anticipating the reflective nature of non-summary contempt proceedings, Rule 75 plots a course for what protections and process must be afforded the alleged contemnor to *allow* the trial court, at the conclusion of the proceeding, the latitude to impose a criminal or civil sanction, or both, in its discretion. *See Camp*, 137 Idaho at 864, 55 P.3d at 318. Because the character of a non-summary contempt proceeding is defined at its conclusion, all involved should remain mindful of what process and protections are afforded the alleged contemnor along the way before a court can properly exercise its discretion in imposing a particular sanction(s). *See id.*

For example, if an unconditional (criminal) sanction is ultimately imposed, there must be a finding of willful contempt "proved beyond a reasonable doubt" when the alleged contempt is "[d]isobedience of any lawful judgment, order or process of the court." I.R.C.P. 75(j)(2); *Camp*, 137 Idaho at 860–61, 55 P.3d at 314–15; I.C. § 7-601(5); *see In re Weick*, 142 Idaho at 281, 127 P.3d at 184. Notably, the party bringing the contempt charge must prove that the contemnor willfully failed to comply with the court order, but the charging party is not required to disprove the contemnor's potential affirmative defense of a then-existing inability to comply with the court order. *Id.* at 282, 127 P.3d at 185; *see* I.R.C.P. 75(h)(1)(A).

Furthermore, if a criminal sanction is to be imposed, "the court cannot exclude evidence in mitigation" from the defendant. *Cooke v. United States*, 267 U.S. 517, 538 (1925); *see* I.R.C.P. 75(b)(2)(B), (*l*)(2). Regarding such evidence, a trial court may take into consideration "[1] the extent of the willful and deliberate defiance of the court's order, [2] the seriousness of the consequences of the contumacious behavior, [3] the necessity of effectively terminating the defendant's defiance as required by the public interest, and [4] the importance of deterring such acts in the future." *United Mine Workers of Am.*, 330 U.S. at 303.

On the other hand, if a conditional (civil) sanction is ultimately to be imposed on the same grounds for contempt under section 7-601(5), there must be a finding of willful contempt by a preponderance of the evidence, *and* a finding "that the contemnor has the *present* ability to comply with the order violated, or with that portion of it required by the sanction." I.R.C.P. 75(j)(1) (emphasis added). Unlike a criminal sanction, a trial court can "impose a civil contempt sanction *only if* the contemnor [has] the present ability to comply with the order violated." *Camp*, 137 Idaho at 865, 55 P.3d at 319 (emphasis added). Without this finding, any imposed

15

sanction—even if labeled conditional—necessarily becomes unconditional and criminal in nature. If the contemnor cannot presently comply with the order violated, the sanction imposed cannot be avoided, and is thereby punitive and will lack the "coercive" characteristic underlying civil contempt. *See McNeil v. Dir., Patuxent Inst.*, 407 U.S. 245, 251 (1972); *Maggio*, 333 U.S. at 72 ("[T]o jail one for contempt for omitting an act he is powerless to perform would . . . make the proceeding purely punitive, to describe it charitably.").

This simply means "[i]ndividuals unable to [presently] comply, because of their own bad faith actions or otherwise, may be subject to *criminal* sanctions, but may not be held in *civil* contempt." *In re Marc Rich & Co., A.G.*, 736 F.2d 864, 866 (2d Cir. 1984) (emphasis added).

Critically, once an alleged contemnor enters a "plea denying the contempt charged," the contemnor is allowed seven days to file and serve all affirmative defenses to civil or criminal contempt, "unless otherwise ordered by the court." I.R.C.P. 75(h)(1). Two of those affirmative defenses impact the trial court's latitude in permissibly imposing a criminal or civil sanction. First, relevant to criminal sanctions, a contemnor might allege that he was "unable to comply with the court order at the time of the alleged violation[.]" I.R.C.P. 75(h)(1)(A). This affirmative defense can only avoid the imposition of an unconditional (criminal) sanction, and under it, the contemnor "bears the burden of producing evidence that creates a reasonable doubt as to his ability to comply." *In re Wick*, 142 Idaho 275, 282, 127 P.3d 178, 185 (2005). Notably, the contemnor may rely on his Fifth Amendment privilege against compulsory self-incrimination to decline questions, but that privilege is not a "sword whereby [the contemnor] asserting the privilege would be freed from adducing proof in support" of carrying his burden of production. *See United States v. Rylander*, 460 U.S. 752, 758 (1983).

Second, relevant to civil sanctions, a contemnor might allege that he lacks "the present ability to comply with the court order" violated. I.R.C.P. 75(h)(1)(B). To prevent a civil sanction from being imposed, the contemnor carries the burden of proving this affirmative defense by a preponderance of the evidence. I.R.C.P. 75(h)(2). The contemner also carries the burden of producing evidence to establish his present inability to comply. *See Rylander*, 460 U.S. at 757; *Maggio*, 333 U.S. at 75; *U.S. ex rel. Thom v. Jenkins*, 760 F.2d 736, 739–40 (7th Cir. 1985). The contemnor's burden to prove this affirmative defense is not met if the contemnor offers no evidence in the proceeding as to his present inability to comply, "stands mute," or simply relies on "his own denials which the court finds incredible[.]" *Maggio*, 333 U.S. at 75–76.

16

Nevertheless, to impose civil sanctions at all, due process still requires that the contemnor, at a minimum, be offered a meaningful opportunity to present testimony and evidence regarding his present inability to comply with a court order. *See Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983); *Thomas, Head & Greisen Emps. Tr. v. Buster*, 95 F.3d 1449, 1458–59 (9th Cir. 1996); *In re Icenhower*, 755 F.3d 1130, 1138–39 (9th Cir. 2014); *Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1304 (11th Cir. 1991). Some courts are satisfied, in limited circumstances, with allowing civil contempt sanctions based solely on affidavits or declarations, and no trial-like hearing. *See, e.g.*, *In re Icenhower*, 755 F.3d at 1139; *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1324 (9th Cir. 1998). However, as explained above, this is not the rule in Idaho. Rule 75 requires that the meaningful opportunity to present such facts be afforded through a trial—not summary judgment.

Accordingly, if the contemnor is precluded by the trial court from offering evidence of a present inability to comply because that affirmative defense is deemed waived under Rule 75(h)(1), a civil sanction for contempt necessarily becomes unavailable. This is because for a civil sanction to be available, the trial court must *find* by a preponderance of the evidence "that the contemnor has the present ability to comply with the order violated, or with that portion of it required by the sanction." I.R.C.P. 75(j)(1), (k). Waiver alone cannot serve as a placeholder for an affirmative finding of fact required by Rule 75.

More importantly, due process cannot permit a finding of fact adverse to the contemnor by virtue of waiver—and not substantial evidence—when the contemnor was also denied any meaningful opportunity at trial to overcome it. *Cf. Clayson v. Zebe*, 153 Idaho 228, 232, 280 P.3d 731, 735 (2012) (explaining the standard of review that findings of fact following a bench trial must be supported by substantial *evidence*). Otherwise, conditional sanctions could pass as civil in name only, while in substance be wholly punitive and arbitrarily imposed. *Cf. Neighbors for a Healthy Gold Fork v. Valley Cnty.*, 145 Idaho 121, 127, 176 P.3d 126, 132 (2007) ("Procedural due process requires some process to ensure that the individual is not arbitrarily deprived of his or her rights in violation of the state or federal constitutions.").

"Contempt proceedings are quasi-criminal in nature[,]" *Matter of Williams*, 120 Idaho 473, 476, 817 P.2d 139, 142 (1991), and the contemnor's liberty interest is always at stake because incarceration could be imposed as either a civil sanction, I.C. § 7-611, or a criminal sanction, I.C. § 7-610. Therefore, if a contemnor is barred from raising the affirmative defense of

17

a present inability to comply with the order violated under Rule 75(h)(1)(B) due to waiver, the only potential sanction later allowed by due process is a criminal one. Thus, to avoid becoming hamstrung into imposing a criminal sanction, leave to permit untimely affirmative defenses in contempt proceedings should be "freely given" by trial courts "when justice so requires." *See* I.R.C.P. 15(a); *West v. El Paso Prods. Co.*, 122 Idaho 133, 135, 832 P.2d 306, 308 (1992).

In the instant case, the district court erred in finding Steven in willful contempt of the Oregon Contempt Judgment through a summary judgment procedure, instead of a trial as required by Rule 75. In light of this procedural error, and the added error of imposing a criminal sanction without the protections required as discussed above, the proceedings on Debra's contempt charge must start anew on remand, from the initial pleading stage.

For this reason, we also do not reach Steven's assignment of error on appeal regarding the district court's decision to deny him leave to assert civil and criminal affirmative defenses under Rule 75(h)(1)(A) and (B). The issue of whether to grant Steven leave to assert affirmative defenses may be revisited on remand if it arises again after the pleadings are closed, and the timing for raising affirmative defenses has expired. In that instance, if the district court decides to deny Steven leave to assert the affirmative defense to a civil sanction under Rule 75(h)(1)(B), then consistent with the principles above, the court must recognize that doing so limits it to imposing only a criminal sanction, through the process and protections required by Rule 75 and the federal constitution. *See Camp*, 137 Idaho at 860, 55 P.3d at 314.

Finally, in light of the decisions above, Steven's assignment of error regarding his motion for reconsideration challenging the grant of Debra's motion for summary judgment is moot.

### C. Because a new trial is ordered, the parties may file a motion for disqualification of the presiding district judge on remand under Idaho Rule of Civil Procedure 40(a)(5).

Steven also requested that a new district judge be assigned on remand. In support of his request, Steven asserts, without citations to the record, a cogent argument, or supporting authority, that the presiding district judge was "contemptuous" and "dismissive." We will not order a new district judge to be assigned when Steven's briefing on this issue does not comply with Idaho Appellate Rule 35(a)(6). *See Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010). Nevertheless, this does not preclude Steven—or Debra—from moving to disqualify the presiding district judge after remand.

"After a trial has been held, *if a new trial is ordered* by the trial court *or by an appellate court*, each party may file a motion for disqualification without cause of the presiding judge" within the time limits set forth in Rule 40(a)(1). I.R.C.P. 40(a)(5) (emphasis added). Here, a trial-like proceeding should have initially been held by the presiding district judge as required by Rule 75—but was not. We are ordering a new trial to occur on remand, after what was effectively a fundamentally defective "trial" proceeding below, within the language of Rule 40(a)(5). Because of this, either Steven or Debra, if they so choose, may properly move to disqualify the presiding district judge under Rule 40(a)(5) after remand, without needing to show cause.

### D. Attorney Fees Below and on Appeal

Steven and Debra both request attorney fees on appeal under Idaho Code section 7-610. Section 7-610 provides that in a contempt proceeding, "the court in its discretion, may award attorney's fees and costs to the prevailing party." *See Bald, Fat & Ugly, LLC v. Keane*, 154 Idaho 807, 812, 303 P.3d 166, 171 (2013). Here, Debra did not prevail on appeal; thus, she is not entitled to an award of fees on appeal. As for Steven, he prevailed on appeal to the extent he can now re-litigate Debra's contempt charge on remand—but he has not ultimately prevailed in this contempt proceeding. "Where there is no present prevailing party, this Court has refused to award attorney's fees." *Portfolio Recovery Assocs., LLC. v. MacDonald*, 162 Idaho 228, 236, 395 P.3d 1261, 1269 (2017). Consistent with this principle, and our discretion regarding fees under section 7-610, if Steven is ultimately the prevailing party below after remand, then the trial court may award him attorney fees for this appeal.

In addition, because we are vacating the judgment of contempt and the decisions underlying the contempt proceedings, we must also vacate the award of attorney fees and costs made below to Debra because she is not yet a "prevailing party" under section 7-610. *See Camp*, 137 Idaho at 866, 55 P.3d at 320. Although Debra is not entitled to fees for this appeal, if she ultimately prevails in her contempt charge against Steven on remand, then the district court may, in its discretion under section 7-610, award Debra reasonable attorney fees and costs for the entire proceedings below, i.e., the proceedings pre- and post-appeal.

Steven also requests attorney fees on appeal under Idaho Code section 12-121, arguing Debra's entire defense of this appeal was frivolous, unreasonable and without any foundation. However, "attorney fees may not be awarded under Idaho Code section 12-121 when the case involves an issue of first impression." *Erickson v. Erickson*, 171 Idaho 352, 371, 521 P.3d 1089,

19

1108 (2022). The instant appeal answered questions of first impression regarding the proper procedure for non-summary contempt proceedings under Idaho Rule of Civil Procedure 75. Moreover, as explained above, other jurisdictions—contrary to Idaho's approach under Rule 75—allow non-summary contempt to be adjudicated through summary judgment in limited circumstances, similar to the procedure employed below and defended by Debra on appeal. *See, e.g.*, *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1324 (9th Cir. 1998). Thus, Steven is not entitled to fees on appeal under section 12-121 because Debra's "entire" defense of this appeal was not frivolous, unreasonable, or without foundation. *See Thomas v. Madsen*, 142 Idaho 635, 639, 132 P.3d 392, 396 (2006).

## IV. CONCLUSION

For the reasons set forth above, the judgment of contempt against Steven is vacated, the district court's decisions underlying its judgment of contempt are also vacated, and this case is remanded for further proceedings that must begin anew, at the initial pleading stage. Steven is awarded costs on appeal under Idaho Appellate Rule 40(a).

Chief Justice BEVAN, and Justices STEGNER, MOELLER, and ZAHN, CONCUR.